turbed for the allowance for permanent improvements. It must be remembered that this submission or reference is without exception or appeal, and the award of the arbitrators can only be successfully attacked on the ground of fraud. If the arbitrators merely made mistakes, and nothing else is alleged here, the injury is remediless.

Both of the above-stated rules should be discharged and the award of arbitrators, and the judgment entered thereon, confirmed.

*Error assigned* was the order of the court.

*Lyon & Hunter*, for appellant.

*McKee, Mitchell & Alter*, with them *George Weil*, for appellees.

PER CURIAM, March 20, 1911:

This appeal is dismissed on the opinion of the learned president judge of the court below in discharging the rules to show cause why the award of arbitrators should not be set aside and the judgment entered thereon stricken from the record.

---

## Dempster *v.* Baxmyer, Appellant.

*Equity—Clean hands—Accounting.*

1. The rule that plaintiff must come into equity with clean hands is confined to misconduct in regard to the matter of litigation.

2. The fact that the plaintiff in a bill in equity for an accounting agreed with the defendant to an improper use of a portion of the fund in the latter's hands, will not bar him from his right to an accounting for the remaining portion of the fund.

*Equity—Jurisdiction—Intervention.*

3. One who discovers that money, belonging in equity to himself, is in the possession or control of parties who are litigating in equity in regard to that control, may be allowed to intervene in the suit and pursue his equitable rights against both of them; and the fact that the

intervener may have a remedy at law, is immaterial, if it appears that his claim is founded on a trust ex maleficio.

Argued Jan. 16, 1911.   Appeal, No. 176, Oct. T., 1910, by defendant, from decree of C. P. No. 2, Allegheny Co., April T., 1908, No. 200, on bill in equity in case of Alexander Dempster v. C. F. Baxmyer, trustee, and C. F. Baxmyer, individually, defendant in the original bill of complaint and one of the defendants in the cross bill, appellant, and the Pittsburg Railways Company, intervening defendant and plaintiff in the cross bill. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction and the enforcement of a trust. Before MILLER, J., specially presiding.

The bill, as amended, set forth a trust relation between the plaintiff and the defendant with respect to a fund in defendant's possession as trustee, and with respect to the assignment of one-half of a lease of a tract of land standing in defendant's name, praying for an enforcement of the alleged trust and an injunction restraining the defendant from disposing of the fund or its equivalent other than in accordance therewith.

The answer averred that the trust had ended; that the plaintiff had no interest in the subject-matter complained of; that defendant was acting for himself individually; and that whatever trust seemed to exist was terminated by compliance with certain conditions.

The case was tried and a decree was entered to the general effect that Baxmyer was a trustee for himself and others. Subsequently the Pittsburg Railways Company was permitted to intervene as a party defendant, and thereupon filed a cross bill praying for the recovery of $25,000 promised to its operating officers.

On the hearing on the bill and answer MILLER, J., found the facts to be as follows:

1. The plaintiff and defendant with three others formed a corporation known as the Bon Air Land Company for

the purpose of dealing in certain real estate, and as such were the owners of fifty-six and one-half acres of land in West Liberty borough, near Pittsburg, which they had laid out in lots. Plaintiff was the largest stockholder and was president of the company. Defendant was the next largest stockholder, and was secretary, treasurer and sales agent for the corporation.

2. For the purpose of better marketing these lots the same parties organized the Bon Air Street Railway Company, and obtained a charter therefor, the lines to extend through the plan of lots of the Bon Air Land Company, making connection with or near the Pittsburg Railways system.

3. In the meanwhile the defendant, as the plaintiff's agent, representing himself as well and the other similar stockholders in the land and railway companies, entered into negotiations, by introduction from the plaintiff with representatives of the Pittsburg & Castle Shannon Railroad, looking towards the acquisition by sale or lease of said railroad to the plaintiff and defendant or the Bon Air Railroad Company. In connection with these negotiations the defendant, representing himself and the other parties already indicated, entered into negotiations with the Pittsburg Railways Company, which finally ended in an agreement between the defendant as an individual and the Pittsburg Railways Company, dated July 13, 1905, whereby, inter alia, the latter company was to acquire a long term lease of the Pittsburg & Castle Shannon Railroad with an assignment of the capital stock of the Bon Air Railway Company and certain rights of way for which the Pittsburg Railways Company agreed to pay Baxmyer, the defendant, the sum of $30,000, for services and commissions in negotiating said lease with the Pittsburg & Castle Shannon Railroad Company. Said agreement also provided for the payment to the Bon Air Land Company of $7,500, for rights of way through its property; also to lease to Baxmyer for ninety-nine years a tract of land known as the "Picnic Grounds," being part of the

Pittsburg & Castle Shannon Railroad Company's holdings; also that it would commence work and complete within four months after franchises and rights of way had been secured, certain electric railway connections, among others a double track electric railway from the Pittsburg & Castle Shannon Railroad through the property of the Bon Air Land Company, along Summit and Dewey streets.

4. At the time the foregoing negotiations were in progress and when the foregoing agreement was executed litigation had commenced or was threatened by a minority stockholder of the Pittsburg & Castle Shannon Railroad Company against the validity of the foregoing lease to the Pittsburg Railways Company. As a result, the Pittsburg Railways Company declined to pay over said sum of $30,000, without indemnity, whereupon a bond in that amount, executed by Baxmyer as principal and Dempster as surety, to the Pittsburg Railways Company, was delivered, conditioned upon the return to the railways company of said sum of $30,000, in case the litigation was adverse to the validity of the lease of the Pittsburg & Castle Shannon Railroad Company to the Pittsburg Railways Company.

5. Shortly before the consummation of the lease and agreement of July 13, 1905, plaintiff executed and delivered to the defendant the following, being exhibit "C," attached to the defendant's amended answer:

"PITTSBURG, June 26th, 1905.

"I do hereby authorize C. F. Baxmyer to sell and convey any interest I may have in the leasehold, or proposed leasehold and agreement, to lease the Pittsburg & Castle Shannon Railroad, in consideration of the promise of said Baxmyer to pay to me the sum of two thousand five hundred dollars ($2,500.00), this sum to be paid me when the proposed purchaser of said agreement or lease make final payment to him for same.

                                "A. DEMPSTER.

"Witness: W. W. Dempster."

6. The $30,000, paid to Baxmyer after the delivery of said indemnity bond, was appropriated between himself and Dempster as follows: $2,000 of the first purchase money received by Baxmyer, and $5,000 equally divided between him and Dempster, the paper exhibit "C" being corroborative as to the amount received by the plaintiff; the remainder, $23,000, was deposited in the joint names of plaintiff and defendant in the Iron & Glass Dollar Savings Bank in the city of Pittsburg, with an agreement that the interest was to be equally divided between them. Under date of October 6, 1906, though not executed of that date, the plaintiff and defendant made a statement of what had been done, and entered into a new agreement of what should be done with the remainder, which is exhibit "A," attached to plaintiff's bill, as follows:

"TO WHOM IT MAY CONCERN:

"Mr. A. Dempster and C. F. Baxmyer, being bounden by a bond given to the Pittsburg Railways Company for the sum of thirty thousand ($30,000) dollars on August 26th, 1906, conditioned on the return of the sum of thirty thousand ($30,000) dollars, paid on that date to C. F. Baxmyer for a certain leasehold, his services, etc., in case the Courts should set aside the said leasehold for certain causes.

"Now to insure or guarantee said A. Dempster from any loss, as well as to pay him his portion in full in sale of said leasehold certain sums of moneys were distributed, and deposits in bank were made as follows, Mr. A. Dempster received his full portion of said sale or the sum of twenty-five hundred ($2,500) dollars in cash.

"C. F. Baxmyer received the sum of four thousand five hundred ($4,500) dollars, and the balance, or the sum of twenty-three thousand ($23,000) dollars, was deposited in the Iron & Glass Dollar Savings Bank in the names of C. F. Baxmyer and A. Dempster, it being agreed to by said Dempster and Baxmyer to leave it there until the satisfaction or return of said bond, said deposit to draw

interest at the rate of three (3%) per centum, the interest was to be divided equally between said Dempster and Baxmyer so long as said money was on deposit.

"Now be it further understood on this date, October 8th, 1906, it is agreed to between said Dempster and Baxmyer to draw on said deposit in the Iron & Glass Dollar Savings Bank, and to use the moneys in making a loan or loans to the Mine La Motte Lead & Smelting Company of sums not to exceed nineteen thousand ($19,000) dollars, on a note or notes of said Company, payable to C. F. Baxmyer, Trustee, and made payable on demand, with bonds of the said Mine La Motte Lead & Smelting Company, of equal amount as collateral security for the payment of said notes and interest, said notes to bear interest at the rate of six (6%) per centum, payable quarterly.

"Now the interest accumulated on said deposit in bank is to be equally divided at this time and the interest on the loans made to the Mine La Motte Lead & Smelting Company is to be equally divided between said Baxmyer and Dempster when received.

"The sum of four thousand ($4,000) dollars in addition to the sum already named is to be held by C. F. Baxmyer, the liability for the return of said sum to be assumed by said Baxmyer.

"In order to make it perfectly clear let it be known that upon the receipt by him of the last named sum of four thousand ($4,000) dollars, and the signing of this agreement that said C. F. Baxmyer is liable for the sum of eight thousand five hundred ($8,500) dollars, of said total sum of thirty thousand ($30,000) dollars.

"Mr. A. Dempster is liable for the sum of twenty-five hundred ($2,500) dollars.

"And C. F. Baxmyer and A. Dempster are jointly liable for the sum of nineteen thousand ($19,000) dollars, as presented by the notes and bonds as held by said C. F. Baxmyer as trustee.

"Now be it understood and it is hereby agreed to

Vol. ccxxxi—3

by us for and in consideration of the above that when the Pittsburg Railways Company complete the Bon Air Street Railway and cars operated thereon, and the sum of seven thousand five hundred ($7,500) dollars is paid to the Bon Air Land Company for rights of way, and certain other leases are made and agreements are complied with to the satisfaction of said C. F. Baxmyer and upon his approval, then these loans are to be called, any deposits of said moneys to be drawn, and any sum over twenty-five hundred ($2,500) dollars, held by said C. F. Baxmyer is to be paid in by him and then and there the sum of twenty-five thousand ($25,000) dollars is to be paid to certain individuals as agreed upon by said C. F. Baxmyer, said sums to be paid by him and him only, or in case of his death by his administrators or executors, the names of the individuals who are to receive said sum is given in a document filed or held with the will of said Baxmyer as of this date.

"This agreement to bind ourselves, our executors, administrators or assigns.

"Witness our hands and seals this eighth day of October, A. D. 1906 (Oct. 8th, 1906).

"(Signed)  C. F. Baxmyer  [Seal]

"A. Dempster.    [Seal]

"Witness:

"E. J. Walden."

7. The interest on said deposit while in said bank was divided equally between the plaintiff and the defendant, and the interest on said note of $19,000 was also divided equally between them until recently, when defendant refused to continue the division; the plaintiff directed the treasurer of the Mine La Motte Lead & Smelting Company, of which he is president, to default with payment of interest, which was followed shortly thereafter by the filing of this bill.

8. The litigation concerning the validity of the lease made by the Pittsburg & Castle Shannon Railroad Com-

pany to the Pittsburg Railways Company, known as Kaufman v. Pittsburg & Castle Shannon R. R. Co., 217 Pa. 599, was affirmed April 22, 1907, and shortly thereafter said indemnity bond was returned canceled to the principal and his surety, being the parties to this bill.

9. During the period between the making of the agreement with the Pittsburg Railways Company by Baxmyer and the institution of this suit, plaintiff demanded that the defendant should assign to him one-half interest in the picnic grounds heretofore referred to. The latter, although denying plaintiff's right, finally agreed to do so if the plaintiff would pay one-half of all the expenses of procuring said Pittsburg & Castle Shannon lease, rights of way, costs of charter, etc. This the plaintiff has not done. He has recently procured assignments of any interests which the three other members of the Bon Air Land Company, as stockholders, might have or had in the lease from the Pittsburg & Castle Shannon Railroad Company.

10. The Pittsburg Railways Company has not paid the $7,500 for rights of way through the Bon Air Land Company's land, nor has it completed the Bon Air Street Railway through the lands of the Bon Air Land Company, nor is it operating cars on or through the same.

11. In the negotiations carried on by Baxmyer with the Pittsburg & Castle Shannon Railroad Company, and with the Pittsburg Railways Company, finally terminating in the lease herein referred to, he was acting for himself and for the plaintiff and other stockholders in the Bon Air Land Company. It is admitted that he is acting for other parties whose names are not disclosed, in the ultimate division of that portion of this $30,000 fund which has not been received by himself and by the plaintiff.

On the hearing on the cross bill the court found the following conclusions of law:

1. The trust fund admittedly held by Dempster and Baxmyer was for the illegal purpose of carrying out a fraudulent agreement with one of the Pittsburg Railways

Company's officials. In view of their admissions and testimony, they receiving and holding this money for that purpose, it is immaterial that the official who they say was to receive the money denies the arrangement; it is binding upon them as between themselves and the railways company.

2. Out of the fund so fraudulently held by them $10,000, part of the money so received for this illegal purpose, is the lawful money of the Pittsburg Railways Company, and the defendants, Dempster and Baxmyer, are trustees ex maleficio for said company in the sum so found to be unlawfully held by them for the purpose of carrying out the agreement admitted by them.

3. The defendants in the cross bill, Baxmyer and Dempster, as trustees ex maleficio for the Pittsburg Railways Company, should pay to said company said sum of $10,000, with interest thereon from the date when the original amount was received from said company.

4. Said defendants in the cross bill, Baxmyer and Dempster, should pay the costs.

On exceptions SHAFER, J., filed the following opinion:

As to the conclusions of law, one of the principal contentions on the part of Baxmyer is, as pointed out in the exceptions, that as $10,000 of the money in question was obtained from the Pittsburg Railways Company by the fraud of its officers, participated in by himself and Dempster, the plaintiff does not come into equity with clean hands, and his bill must therefore be dismissed, and the cross bill with it. We are of opinion that this contention cannot be maintained for two reasons: (1) because according to Baxmyer's account of the matter, and as found by the court, only $10,000 of the money received from the Pittsburg Railways Company was obtained by fraud, the remaining $15,000 of the original payment being, so far as appears, received for legitimate purposes. The fraud of the parties in regard to the $10,000 can furnish no reason why the plaintiff is not entitled to relief in regard

to the balance of the money which was obtained for other purposes. The rule that a plaintiff must come into equity with clean hands is confined to misconduct in regard to the matter in litigation; and (2) for the reason that the original bill does not disclose the source of the moneys in dispute, nor does it attempt to collect the same or ask for any account of the same, but asks for an injunction restraining Baxmyer from calling a certain demand note made by a company in which the plaintiff is interested, contrary to his agreement, and the fraud does not appear until Baxmyer sets it up himself as a reason why he should not be interfered with in calling the note. Under these circumstances it would appear that it is Baxmyer, rather than the plaintiff, who is endeavoring to come into equity contrary to the maxim he invokes.

Both the plaintiff and defendant have excepted to the sustaining of the cross bill of the intervening defendant, the Pittsburg Railways Company, the plaintiff's exceptions being principally to the finding of fact as to the manner of obtaining the $10,000, and the defendant's exceptions being founded upon its claim that the original bill should be dismissed for the reasons above stated, and further that the cross bill is not germane to the subject-matter of the original bill, and in addition that the plaintiff in the cross bill has an adequate remedy at law. As to whether a cross bill is proper remedy for the Pittsburg Railways Company, the question is whether one who discovers that money belonging in equity to himself is in the possession or control of parties who are litigating in equity in regard to that control, may be allowed to intervene in the suit and pursue his equitable rights against both of them, or on the other hand, is bound to bring an original bill against them. We are of opinion that the case is fairly within the rule that a court of equity, when it once obtains jurisdiction of a subject, which in this case is the rightful possession and control of a certain sum of money, not only may, but should, hear and determine all matters concerning it arising between all parties whose

claims arise out of the same transaction. The fund in this case is a definite sum of money invested in a note of a certain company. The plaintiff in the cross bill would seem to us to have a right, if he fears the solvency of the other parties, to ask that the fund and the note representing it should be impounded for his benefit, by an injunction restraining either of the parties from taking the money into their own possession. The plaintiff in the cross bill has not asked for this relief, but that the circumstances are such that it would appear to be entitled to it seems to us to indicate that it is entitled to intervene and maintain its rights in this proceeding, rather than to maintain an original bill. As to the contention that the plaintiff in the cross bill has an adequate remedy at law, we are of opinion that as its claim is founded on a trust ex maleficio it is entitled to relief in equity, whatever may be the present status of the legal remedy in such cases.

While neither plaintiff nor defendant appear to have formally excepted to the decree recommended by the trial judge, we are of opinion that justice requires a modification of the decree restraining the defendant, Baxmyer, from calling for payment of the note in question, so far as the $10,000 is concerned. The money which the Pittsburg Railways Company should receive is part of that note, and justice to all the parties would seem to require payment out of it, rather than payment by either of the parties out of his own funds, except upon a loss of the fund itself by the nonpayment of the note.

The exceptions are therefore dismissed, and it is directed that a decree be entered allowing the defendant, Baxmyer, to call for payment of such part of the note described in the bill as will equal $10,000, with interest from July 13, 1905, to be paid to the plaintiff, Dempster, and the defendant, Baxmyer, and that the said Dempster and Baxmyer thereupon pay over the said sum to the Pittsburg Railways Company and that if the said sum shall not be received from the makers of said note and paid over to the Pittsburg Railways Company within ninety

days the said Dempster and Baxmyer shall thereupon pay the sum of $10,000, with interest from July 13, 1905, to the Pittsburg Railways Company, and that the said Baxmyer be enjoined from calling for payment of the balance of the note in question in the case, unless and until it shall be made to appear that the present investment is in jeopardy, defendant Baxmyer having leave to apply at any time for leave to call the same upon showing grounds therefor.

*Error assigned* was the decree of the court.

*W. S. Dalzell,* with him *W. H. Lemon,* for appellant.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* for Pittsburg Railways Company, appellee.

*Samuel S. Mehard,* with him *Francis S. Bennett,* for Alexander Dempster, appellee.

Per Curiam, March 20, 1911:
This appeal is dismissed and the decree affirmed, at appellant's costs, on the opinion of Judge Shafer on the exceptions to findings of fact and conclusions of law upon bill and cross bill.

———————————

## Weisfield, Appellant, *v.* Beale.

*Mines and mining—Coal lands—Easements—Right of transportation across surface—Practice, C. P.—Form of action—Trespass, Q. C. F.—Act of May 25, 1887, P. L. 271—Bankruptcy—Provable claims.*

1. A party who purchases the surface of a tract of land subject to the right of the owner of the underlying coal to transport the coal across the surface of the land may recover damages in an action of trespass against the owner of the coal for the transportation across the land of coal taken from a mine upon an adjoining tract of land.

2. In such case the fact that the declaration was in trespass quare