# Delaware, Lackawanna & Western R. R. *v.* Stroudsburg, Water Gap, etc., Street Ry.

*Railroads—Right-of-way—Present and future uses—Attempted condemnation of railroad land—Street railway.*

1. The right-of-way owned by a railroad company although in excess of the minimum width of sixty feet, is, as soon as acquired, impressed with a public use and constitutes a public highway.

2. Where land in excess of the minimum width of sixty feet is necessary to enable the railroad company to carry on its present and prospective business, such land cannot be condemned by a street railway company.

3. It seems that no necessity can be imagined that would justify a street railway company in invading a railroad right-of-way of one hundred feet in width necessary for the maintenance and operation of an established four track road of a great trunk line.

*Equity—Maxims—Clean hands—Subject-matter—Railroads.*

4. Where a court of equity is appealed to for relief, it will not go outside of the subject-matter of the controversy, and make its interference depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against defendant or the relief which he demands.

5. The doctrine of coming into equity with clean hands will not be applied to a railroad company which seeks to enjoin a street railway company from condemning a portion of the former's right-of-way, because of plaintiff's previous conduct in endeavoring to oust defendant from land previously leased to it by plaintiff and later sought to be condemned.

Argued February 2, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeals, Nos. 157 and 159, Jan. T., 1927, by plaintiff and defendant, from decree of. C. P. Northampton Co., July T., 1923, No. 2, on bill in equity, in case of Delaware, Lackawanna & Western R. R. Co. v. Stroudsburg, Water Gap & Portland Street Railway Co. Reversed in part.

Bill for injunction to restrain condemnation proceedings. Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

Decree entered enjoining appropriation of part of land in controversy, but not interfering with taking of other part. Both plaintiff and defendant appealed.

*Error assigned,* inter alia, in each appeal, was the decree, quoting record.

*Reese H. Harris* and *Wm. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* with them *Gomer W. Morgan* and *Daniel R. Reese,* for Delaware, Lackawanna & Western Railroad Co.—The court has found facts, the necessary implication of which is that parcel No. 3 is necessary to the railroad company's exercise of its corporate franchises and, therefore, the injunction should cover this parcel: Pittsburgh Junc. Ry. Co.'s App., 122 Pa. 511.

In dealing with the question of necessity, the burden of proof is on the trolley company to show that parcel No. 3 is not necessary to the railroad company, and this burden has not been met.

The court below found as a fact that there was no necessity for the trolley company to locate its tracks on the land which it proposes to condemn: Penna. R. R. Co.'s App., 115 Pa. 514; Groff's App., 128 Pa. 621.

The law is well settled that a railroad right-of-way "whatever its established width," shown to be actually devoted to or needed for its line of railroad and appurtenances, in the present or prospectively within a reasonable future time, is not subject to condemnation by a trolley company merely for the latter's convenience and economy: Sharon R. R. Co.'s App., 122 Pa. 533; Pitts. Junction R. R. Co.'s App., 122 Pa. 511; P., W. & B. R. R. v. Williams, 54 Pa. 103; Dublin & Droheda R. R. v. Navan R. R., Irish Reports, 5 Eq. 393; C. & P. R. R. v. Speer, 56 Pa. 325; C., B. & Q. R. R. v. Wilson, 17 Ill.

123; Scranton G. & W. Co. v. Coal & Iron Co., 192 Pa. 80; Chew v. Phila., 257 Pa. 589.

There is no necessity for defendant to condemn a portion of plaintiff's right-of-way. This is established by the undisputed evidence of both parties: Sharon Ry. Co.'s App., 122 Pa. 533; Pitts. Junction R. R. Co.'s App., 122 Pa. 511.

*E. J. Fox,* with him *J. W. Fox, C. Raymond Bensinger* and *A. Mitchell Palmer,* for Stroudsburg, Water Gap & Portland Street Ry. Co.—The railroad company acted in bad faith and is not entitled to equitable relief: Reynolds v. Boland, 202 Pa. 642; Hays's Est., 159 Pa. 381; Brown v. Pitcairn, 148 Pa. 387; Palmer v. Harris, 60 Pa. 156.

The court cannot grant the relief prayed for, because the land under condemnation was not land that was actually used for corporate purposes: D., L. & W. R. R. v. Tobyhanna Co., 232 Pa. 76; Scranton G. & W. Co. v. D., L. & W. R. R., 225 Pa. 152; Youghiogheny Bridge Co. v. R. R., 201 Pa. 457.

OPINION BY MR. JUSTICE SCHAFFER, April 11, 1927:

Plaintiff railroad company filed this bill in equity against defendant street railway company asking an injunction against the latter forbidding the condemnation by it of land belonging to plaintiff claimed to be part of its right-of-way essential and necessary to the operation of its railroad. The chancellor enjoined the appropriation of part of the land but refused to interfere with the taking of another part. From the decree so disposing of the controversy both parties have appealed.

In the year 1911 the railroad company, which was the owner in fee of the land, leased to defendant a strip of it for the location and operation of a street railway thereon. The lease was for one year and was to continue until either one of the parties terminated it by notice. The lease recited that the land demised was part of the

right-of-way of the railroad company. Defendant constructed its street railway on the property, maintaining and operating it thereon for a period of eleven years. In 1922, differences having arisen between the two corporations, plaintiff gave the notice provided for in the lease requiring defendant to vacate the land and to remove its street railway therefrom. Following receipt of this notice, defendant began proceedings to condemn the land leased by it and occupied by its tracks, and plaintiff thereupon began this action to enjoin the condemnation on the ground that the land sought to be appropriated is part of its right-of-way.

The findings of fact by the chancellor, supported as they are by evidence, are controlling with us: Mahler v. Singer, 285 Pa. 540; Miller v. Central Trust & Savings Co., 285 Pa. 472; Doll v. Loesel, 288 Pa. 527. Based upon them, we think he should have granted plaintiff the full relief sought.

We shall cull from the exhaustive findings those which we think necessary to a determination of the mooted questions and to an explanation of the conclusion we have reached.

The railroad of plaintiff is its main line extending from Hoboken to Buffalo. Traffic over it is steadily increasing. While much of it is four tracked, that part passing through the land in question is only double tracked. The defendant's street railway is located to the west of plaintiff's railroad. To the west, plaintiff's property extends a uniform distance of fifty feet from the center line of its right-of-way, which line coincides approximately with the center line between its two tracks. On this fifty feet wide strip is part of the public road which was so located by the railroad company when it became necessary to change the location of the existing highway to enable the railroad to be built. The street railway tracks of the defendant are in some places on the public road. For a considerable distance, about 700 feet, the land which defendant proposes to condemn

is within thirty feet from the center line of the railroad company's right-of-way. Parcel No. 1, as to which the chancellor issued an injunction, is about 1,125 feet long and at its southern end is 19.72 feet from the center line of the railroad; this distance gradually increases to thirty feet at a point about 700 feet from the southern end and thence further gradually increases to fifty feet at the point where the street railway tracks leave the plaintiff's property. Parcel No. 2 (as to which the chancellor refused to enjoin) is about 873 feet long. At its southern end it is fifty feet from the center line of the railroad company's right-of-way; this distance gradually decreases until it reaches a point where it is but thirty feet away and then gradually increases until it again becomes fifty feet distant. The fact that at no place is this particular piece nearer than thirty feet to the center line of defendant's right-of-way was, it would seem, the controlling reason with the chancellor for refusing to enjoin its condemnation.

The chancellor found that there is a siding of plaintiff south of the property sought to be condemned which is not now long enough to meet the immediate needs of the railroad company at this point and that it requires at present an additional siding at the locality in question. It was also found that the railroad company had made preliminary surveys for a four-track line on these parcels of land, but no action has been taken by its board of directors to actually build the two additional tracks and that if the railroad company were to construct either a four-track line or one additional track or siding it would be necessary to locate one new track upon the fifty feet right-of-way to the west of its present tracks at the points where defendant is seeking to condemn.

The chancellor came to the conclusion from the evidence he heard and so found that in order to operate properly a four-track railroad at the points in question or to operate the present line with an additional siding, a minimum right-of-way fifty feet in width to the west

of the present center line of the railroad is necessary; that the railroad company has been ordered by the interstate commerce commission to install along its tracks at the point in question a system of automatic train control which requires a power line with a ten-feet wide clearance and that the operation of plaintiff's railroad requires space, in addition to that necessary for its tracks, for drainage ditches, power and telegraph lines, guy wires, poles, for the piling of ties and other materials, space in which to operate mechanical devices for clearing and maintaining the right-of-way and in which to lay extra tracks in case of accidents. The court specifically found that parcel No. 1 sought to be condemned by defendant "is necessary both for the present and future requirements and needs of the railroad company, and is necessary to the proper exercise of its corporate franchises" and is not greater in area than will be required in the near future by the railroad company for its corporate purposes and is necessary for the construction incident to the automatic train control ordered by the interstate commerce commission. The chancellor reached the conclusion that there is no absolute necessity which requires defendant to locate its tracks upon the land which it proposes to condemn.

Notwithstanding the foregoing findings the court determined that an injunction ought not to issue forbidding the condemnation of parcel No. 2, because, while it is within the fifty feet right-of-way, it is beyond the thirty feet line marking the limit of plaintiff's minimum right-of-way of sixty feet which it is authorized to appropriate under the Act of Assembly. As before stated the court granted the injunction as to parcel No. 1 where defendant sought to condemn within the thirty feet limit. We are unable to agree with the court's conclusion as to parcel No. 2, in view of its findings. The chancellor has found that the 100 feet strip was reserved by plaintiff for its right-of-way out of a larger tract which it owned and that when plaintiff comes to lay down its

four tracks this entire width will be necessary to the operation of its road. The court seems to have based its refusal of the injunction as to parcel No. 2 on the case of Delaware, Lackawanna & Western R. R. Co. v. Tobyhanna Co., 228 Pa. 487, and upon the assumption that there is a distinction between a railroad company's minimum right-of-way sixty feet wide and additional width which it may require for the extension of its facilities and the adequate discharge of its service obligations to the public. Under the facts here appearing the right-of-way 100 feet wide was, under our rulings, as free from invasion by plaintiff as was the minimum sixty feet right-of-way. The case just referred to is not authority for a difference in legal treatment between the minimum right-of-way and that which may be required by a railroad company in addition to the sixty feet. The opinion in that case expressly points out that (p. 492) "The right-of-way of a railroad company, *whatever its established width,* as soon as acquired, is impressed with the public use; it constitutes a public highway. The railroad company holds it in trust for the people of the Commonwealth......Not so with respect to estates in land acquired for facilities in operation, outside the right-of-way." We think it could not be successfully contended, on the showing here made, if the railroad company possessed only a sixty-feet right-of-way at the place in controversy, that it would not be permitted to acquire by condemnation the additional width of forty feet. "A railroad company has a right to consider the needs of the future and to construct its road and make its plans with reference to those future needs": Pittsburgh Junction Ry. Co.'s App., 122 Pa. 511, 530. The principle which here controls is that invoked in Sharon Ry. Co.'s App., 122 Pa. 533: "Where land acquired by one railroad company is necessary to enable it economically and expeditiously to carry on its present and prospective business, it cannot afterwards be taken for a like use by another company except in case of absolute necessity,

not for mere economy and convenience." See also Scranton Gas, etc., Co. f. Northern Coal & Iron Co., 192 Pa. 80; 20 C. J. 606, 607. We think it may now be safely said, having in view modern traffic conditions, that we can imagine no necessity which would enable another eminent domainer to invade the right-of-way necessary to the maintenance and operation of a four-track road by an established trunk line railroad such as plaintiff's.

It is argued by defendant that plaintiff cannot invoke an equitable remedy because it does not come into equity with clean hands, that its previous conduct in endeavoring to oust defendant from the land was such as to put it beyond the pale of equitable jurisdiction. The equitable maxim invoked has no more application here than it would have in a case where one adjoining landowner had badly treated his neighbor and the latter had then proceeded to invade the former's close under a claim of right so to do. Equity would not stand aside the one whose rights were transgressed and permit them to be appropriated because of his previous bad conduct. "When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant or the relief which he demands": Pomeroy's Equity Jurisprudence, 3d ed., vol. 1, section 399; Comstock v. Thompson, 286 Pa. 457, 461; Dempster v. Baxmyer, 231 Pa. 28; Lewis & Nelson's App., 67 Pa. 153, 166.

The decree of the court below which directs an injunction to issue against defendant, restraining it from further proceeding with the condemnation of parcel of land No. 1 in the condemnation proceedings, is affirmed. It is directed that a like order shall issue against defendant restraining it from proceeding with the condemnation of the parcel of land No. 2 in the condemnation proceedings. Costs on both appeals to be paid by defendant.