McLaughlin *v.* McLaughlin, Appellant.

Argued November 16, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

reargument refused February 25, 1963.

*James A. Peace,* with him *Floyd W. Tompkins,* and *Tompkins & Peace,* for appellants.

*Francis T. Anderson,* with him *John Patrick Walsh,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 21, 1963:

Defendant-appellant, James J. McLaughlin, and plaintiff-appellee, Grace A. S. McLaughlin, are husband and wife. They owned, as tenants by the entireties, fifty-five shares of the common stock of American Telephone and Telegraph Company, represented by three stock certificates for five, twenty-four and twenty-six shares respectively. These shares were originally acquired by the parties as follows: (1) five shares purchased by Mrs. McLaughlin under an employee's stock purchase plan and payroll deductions, while she was employed by Bell Telephone Co., originally issued in the joint names of the husband and wife, as tenants by the entireties; (2) twenty-four shares acquired by Mrs. McLaughlin as legatee under her father's will, originally registered in her name and subsequently transferred into the joint names of the husband and wife, as tenants by the entireties; and (3) twenty-six shares acquired as the result of a stock split, originally issued in the joint names of the husband and wife, as tenants by the entireties.

Marital difficulties subsequently arose between the McLaughlins and domestic frictions ensued. In an apparent effort to settle their affairs, Mrs. McLaughlin procured the endorsement, in blank, of Mr. McLaughlin on the stock certificates and presented them to Geo.

E. Snyder & Co. with directions to sell five shares and transfer the other fifty shares to her in her individual name. About one week later, Mr. McLaughlin informed Snyder & Co. that his signature had been obtained under false pretenses and advised Snyder that he repudiated his endorsement. As a result of this letter, Snyder refused to proceed with the transfer of fifty shares of the stock. In the interim between presentation of the certificates to Snyder and Mr. McLaughlin's letter, Snyder had sold five shares and issued a check payable to Mr. and Mrs. McLaughlin for the proceeds of the sale. Mrs. McLaughlin endorsed this check in both her and her husband's names and negotiated it.

Upon the refusal of Snyder to proceed with the transfer of the shares in its possession, Mrs. McLaughlin instituted an action in equity against Mr. McLaughlin and Snyder, seeking, inter alia, a declaration of her ownership of the fifty shares, an injunction enjoining Mr. McLaughlin from interfering with her right to obtain a transfer and issuance of certificates in her name alone, and an order directing Snyder to deliver the certificates in its hands to her. After conclusion of the pleading cycle, the matter was tried and the chancellor made findings of fact and conclusions of law and entered a decree nisi, granting the relief prayed for in the complaint. Mr. McLaughlin filed exceptions to the adjudication, which were overruled, and the decree nisi was made final; this appeal followed.

The chancellor found that all of the stock was originally the separate property of Mrs. McLaughlin; that Mr. McLaughlin had failed to establish that his signatures to the blank powers of attorney had been obtained by fraud or misrepresentation and that he was bound by said signatures. He further held that the signatures were unconditional and that no legal basis existed for Mr. McLaughlin's interference with the transfer.

4

Appellant contends that the court below erred in granting equitable relief to appellee in a case where she had induced him to sign stock certificates by means of deceit, and that it further erred in finding that the stocks were originally the separate property of appellee. These assignments of error ignore what is hornbook law, namely, that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict, if they are supported by adequate evidence, and ordinarily will not be disturbed on appeal. *Durso v. D'Urso,* 409 Pa. 487, 187 A. 2d 270 (1963) ; *Shydlinski v. Vogt,* 406 Pa. 534, 179 A. 2d 240 (1962) ; *Sechler v. Sechler,* 403 Pa. 1, 169 A. 2d 78 (1961). The chancellor's findings as above set out are supported by adequate evidence and have been approved by a court en banc, consequently, we will not disturb them.

Appellant next argues that the court below should have dismissed the suit since it was brought by a married woman against her husband for a purpose which does not seek to protect or recover her separate property. He submits that the property was owned by the entireties when the suit was instituted and the manner of its original acquisition is immaterial. This argument is untenable since it ignores the fact that appellant, in effect, unconditionally assigned his interest to appellee, whereby she became the sole owner, prior to the institution of the action in equity.

Finally, appellant submits that appellee is not entitled to equitable relief because she has "unclean hands." This submission is based upon the admitted endorsement and negotiation by appellee of the check issued in her and appellant's names, without the authority of appellant. The equitable maxim that he who comes into equity must do so with clean hands, is firmly established in our law: 13 P.L.E., Equity, §34 and cases cited therein. It is equally well established, how-

ever, that " '. . . One of the limitations of the doctrine of coming into equity with unclean hands is that the wrongdoing of the plaintiff must have been in reference to the very matter in controversy and not merely remotely or indirectly connected therewith: Comstock v. Thompson, 286 Pa. 457, 461; Delaware, Lackawanna & Western R. R. Co. v. Stroudsburg, Water Gap & Portland Street Railway Co., 289 Pa. 131, 138; Valley Smokeless Coal Co. v. Manufacturers' Water Co., 302 Pa. 232, 238 . . . .' Many other cases have likewise held that the doctrine of unclean hands applies only where the plaintiff's wrongdoing *directly* affects the equitable relations *existing between the parties*: Robinson v. Goldberg, 331 Pa. 401, 200 A. 4; Dales v. Muir, 351 Pa. 187, 40 A. 2d 476; Goldberg v. Goldberg, 375 Pa. 78, 99 A. 2d 474; Walacavage v. Walacavage, 168 Pa. Superior Ct. 334, 77 A. 2d 723." *Holst v. Butler,* 379 Pa. 124, 108 A. 2d 740 (1954). Accord: *Goebel Brewing Co. v. Esslingers, Inc.,* 373 Pa. 334, 95 A. 2d 523 (1953); *Hartman v. Cohn,* 350 Pa. 41, 38 A. 2d 22 (1944); *Comstock v. Thompson,* 286 Pa. 457, 133 A. 638 (1926). In the instant case, we fail to discern any change in the equitable relationships between the parties resulting from appellee's unauthorized endorsement and negotiation of the check, particularly in view of the fact that the check represented proceeds of the sale of stock previously unconditionally assigned to her.

Decree affirmed.

Appellant to pay costs.