## Wallace v. The John Forrest Kratz Agency, Inc.

*Brian J. McCullough,* for plaintiff.
*Colin M. Hannings,* for defendant.

RUFE, *J.,* October 1, 1982—In this equity case plaintiff was represented by defendant real estate agency in the sale of her home. Defendant agency secured a buyer and a standard agreement of sale was executed including the requirement that plaintiff/seller must pay two points mortgage placement fee. However, the closing on the sale was delayed for one week beyond the agreement of sale closing date during which interim the mortgage placement fee required of plaintiff/seller jumped to six points. Plaintiff first learned of this from defendant at the closing, by which time defendant had already taken plaintiff through another real estate closing wherein she was the

purchaser of another home, and therefore, under severe economic pressure to complete the closing on the property in question.

Plaintiff now seeks to recover the four points mortgage placement fee from defendant, together with forfeiture of the balance of defendant's commission, punitive damages and costs.

In reaching the following findings of fact we have resolved all conflicts of testimony and questions of credibility in favor of plaintiff and her witness and against defendant's witnesses.

## FINDINGS OF FACT

1. Plaintiff Mildred Lewis Wallace, a/k/a Mildred Lewis is an adult individual who resides at 22 Unami Trail, New Britain Township, Bucks County, Pa.

2. Defendant John Forrest Kratz Agency, Inc., is a corporation organized under the laws of the Commonwealth of Pennsylvania with business offices located in both Bucks and Montgomery counties.

3. Defendant John Forrest Kratz Agency, Inc., is a real estate broker duly licensed under the Real Estate Licensing Act, February 19, 1980, P.L. 15, et seq., 63 P.S. §455.101 et seq.

4. On April 8, 1980 plaintiff executed an exclusive agency contract wherein she granted to defendant John Forrest Kratz Agency, Inc., the exclusive right to sell the property owned by plaintiff and located at 112 Walnut Street, Silverdale, Bucks County, Pa.

5. The exclusive agency contract extended for a term of five months and established six percent of the gross consideration as a commission for de-

fendant John Forrest Kratz Agency, Inc., upon sale of the property.

6. On May 10, 1980 plaintiff executed an agreement of sale whereby she agreed to sell her 112 Walnut Street, Silverdale property to one James MacDonald.

7. The consideration to be paid by Mr. MacDonald to plaintiff was $74,000.

8. Prior to the preparation of the May 10, 1980 agreement of sale, Mr. Henson, salesman for the John Forrest Kratz Agency, Inc., contacted Colonial Mortgage Service Company and requested a "point quote" to determine the number of "points" that plaintiff, as seller, would be required to pay at settlement in the event that Mr. MacDonald, as buyer, was granted an F.H.A. mortgage.

9. Colonial Mortgage Service Company indicated that seller would be required to pay two points as a mortgage placement fee.

10. It was customary in the real estate business at that time that an oral point quotation would be a commitment lasting for a period of 90 days to loan money at the rate stated.

11. Plaintiff agreed to pay a maximum of two points or $1,435 as a mortgage placement fee.

12. The agreement of sale as signed by plaintiff specified in Paragraph 4(d) "maximum mortgage placement fee, if any, to be paid by seller: 2 points ($1,435)."

13. The agreement of sale was prepared on a standard John Forrest Kratz Agency, Inc., agreement of sale form by David Henson, a licensed real estate salesman associated with defendant John Forrest Kratz Agency, Inc.

14. The signatures on the agreement of sale for

plaintiff's Silverdale property were witnessed by David Henson.

15. The agreement of sale itself was counter-signed by Jeffrey Kratz of defendant John Forrest Kratz Agency, Inc., as seller's agent.

16. Jeffrey Kratz was responsible for the overall supervision of the sales activities of David Henson.

17. David Henson was required to meet with Jeffrey Kratz on a regular basis, review each active file with Mr. Kratz and receive instructions regarding proper methods of procedure.

18. Plaintiff thereafter retained defendant John Forrest Kratz Agency, Inc., to locate a new residence for plaintiff to purchase.

19. By agreement of sale dated June 7, 1980, plaintiff contracted to purchase from Russell and Jean D'Aversa a town house property situated at 22 Unami Trail, New Britain Township, Bucks County, Pa.

20. The purchase price of this property was $46,900.

21. The agreement of sale for the New Britain Township property was prepared by David Henson on a standard John Forrest Kratz Agency, Inc., agreement of sale form.

22. Settlement on the Silverdale property was originally scheduled to take place on or before August 15, 1980.

23. Settlement on the New Britain Township property was originally scheduled to take place on or before August 16, 1980.

24. It was plaintiff's intention to apply the proceeds from the sale of her Silverdale property toward the purchase of the New Britain Township property.

25. Defendant John Forrest Kratz Agency, Inc., was aware of plaintiff's intent.

26. The purchase of plaintiff's Silverdale property by Mr. MacDonald was to be financed by an F.H.A. mortgage loan.

27. The mortgage application for Mr. MacDonald's F.H.A. loan was submitted through defendant John Forrest Kratz Agency, Inc., soon after execution of the May 10, 1980 agreement of sale.

28. The mortgage loan application was submitted to the Colonial Mortgage Service Company.

29. Plaintiff never had any direct contact with Colonial Mortgage Service Company.

30. Plaintiff was not told by defendant John Forrest Kratz Agency, Inc., or any of its agents, servants, workingmen or employees, that the possibility existed that the mortgage placement points that plaintiff would be required to pay at settlement would increase if settlement were not held within 90 days of the date of the agreement of sale.

31. Prior to obtaining F.H.A. mortgage financing for Mr. MacDonald, it was required that certain inspections, repairs, and reinspections be made to plaintiff's Silverdale property.

32. The necessary inspections and repairs to the Silverdale property were made during the month of July and the early part of August, 1980, and were arranged for by defendant John Forrest Kratz Agency, Inc., utilizing contractors defendant John Forrest Kratz Agency, Inc., had previously engaged on other jobs.

33. During the months of July and August of 1980 the residential mortgage market underwent severe fluctuations with the result that the "points" required to be paid by seller for F.H.A. financing, changed on a day to day basis.

34. Defendant John Forrest Kratz Agency, Inc., was aware of the existence of the fluctuating mortgage money market.

35. During the first week of August, 1980 it became apparent to Mr. Henson and defendant John Forrest Kratz Agency, Inc., that settlement on plaintiff's Silverdale property could not be held until some time after the August 15, 1980 settlement called for in the May 10, 1980 agreement of sale.

36. Henson was subsequently advised by Colonial that Colonial could not and would not guarantee a two point maximum mortgage placement fee if settlement were delayed beyond the August 15, 1980 settlement date. Henson advised Jeffrey Kratz of the possibility that plaintiff's mortgage placement fee would rise if settlement were extended.

37. Jeffrey Kratz advised Henson not to discuss this matter with plaintiff.

38. Approximately one week prior to the anticipated August 15, 1980 settlement date, a meeting was held at the Davis Tavern in North Wales, Montgomery County, Pa.

39. Present at that meeting were Jeffrey Kratz, Jay Kratz, Peggy Kratz, David Henson and Edward Weldt of the Colonial Mortgage Service Company.

40. At that meeting the participants specifically discussed the possibility that plaintiff's mortgage placement fee would rise if settlement were extended beyond the August 15, 1980 settlement date.

41. Mr. Weldt advised those present that Colonial Mortgage Service Company would not guarantee the two points as quoted if settlement were extended beyond the August 15, 1980 date. Mr. Weldt advised that the mortgage placement fee required to be paid by seller would, in all likelihood, rise if settlement were extended beyond the August 15, 1980 date.

42. On the following day Jeffrey Kratz advised

David Henson that any increase in the mortgage placement fee paid by seller would be taken care of by Jay Kratz at settlement.

43. Henson was again advised by Jeffrey Kratz not to discuss the potential increase in mortgage placement fee with plaintiff.

44. A "paper" settlement on plaintiff's purchase of the 22 Unami Trail, New Britain Township property was held on August 15, 1980 at the John Forrest Kratz Agency, Inc., offices in Chalfont, Pa.

45. Plaintiff thereafter made arrangements to vacate her property in Silverdale and move to New Britain Township.

46. Mr. MacDonald made arrangements to vacate his apartment and move to the Silverdale property.

47. Mr. and Mrs. D'Aversa arranged to vacate the New Britain Township premises.

48. Settlement on the Silverdale property was held on August 22, 1980 at the John Forrest Kratz Agency, Inc., offices in North Wales, Montgomery County, Pa.

49. Plaintiff attended settlement and was represented by defendant John Forrest Kratz Agency, Inc., through Jay Kratz and David Henson.

50. When the mortgage papers arrived from Colonial Mortgage Service Company, Jay Kratz discovered that the sum of six points ($4,305) was being charged to plaintiff as a mortgage placement fee.

51. Jay Kratz did not review the mortgage documents with plaintiff, but instead, excused himself from the settlement claiming that he had other business to attend to.

52. David Henson was required to review the mortgage papers with plaintiff and advise plaintiff that the "points" were $4,305.

53. This was the first indication received by

plaintiff that plaintiff would be required to pay in excess of two points, or $1,435.

54. Henson advised plaintiff that she would have to pay the six points and sign the settlement sheet in order to complete settlement.

55. Plaintiff felt that she had no alternative but to complete settlement and obtain the purchase money necessary to complete plaintiff's purchase of her New Britain Township property.

56. Plaintiff signed the settlement sheet and paid the six points as demanded by Colonial Mortgage Service Company.

## DISCUSSION

It is obvious from the facts in this case that defendant corporation was aware the delay in holding settlement on plaintiff's property would render plaintiff responsible for several thousand dollars more in mortgage placement fees, thus reducing her net receipts from the sale.

Knowing that fact well in advance of the settlement date, defendant nevertheless intentionally withheld that information from her, and deprived her of the opportunity to take any steps to possibly mitigate her losses on that account, which step may have included the possibility of cancelling both real estate transactions from which defendant was to receive commissions. Clearly, defendant sought to put plaintiff in a position whereby she would have no alternative but to complete the settlement, pay the extra money, swallow hard, and let it go at that, thus preserving intact their commissions on both transactions. Equity cannot sanction such actions.

The only question raised by defendant deserving attention once the factual disputes are resolved, is the effect of plaintiff's release of defendant's salesman as an individual party defendant. In this

regard, plaintiff originally sued both defendant corporation and defendant's salesman individually because all of plaintiff's contacts with defendant were through the salesman. Subsequently, plaintiff released the salesman from the action, prompting defendant to argue that pursuant to the doctrine of respondeat superior, the release of the salesman/employee was imputed to the defendant/employer, citing Litz v. McGrath, 16 D. & C. 3rd 239, 242 (1980).

However, the doctrine of respondeat superior is not applicable in this case as it only prevails in cases where the liability of the employer/master/principal derives from the wrongful acts of the employee/servant/agent while acting within the scope of his employment. Continental Aircraft Sales v. McDermott Bros. Co, 316 F. Supp. 232 (1970). Thus, when the primary wrongdoer, i.e., the employee/servant/agent, is absolved of liability, the secondary defendant, i.e., the employer/master/principal is similarly relieved of responsibility under that principle. Litz v. McGrath, supra.

In this case the primary wrongdoer was a principal of the corporation who consciously and intentionally withheld the critical information from plaintiff, instructed his salesman not to inform plaintiff of her increased expenses, and even misled the salesman by informing him that he, the principal of defendant corporation, would take care of the increased expenses at the settlement. The doctrine of respondeat superior is inapplicable because the salesman was not the wrongdoer; that dubious distinction applies to the principals of defendant corporation, the salesman's employer.

Punitive or exemplary damages may be awarded in a case where the damaging act also imports insult or outrage, and is committed with a view to

oppress, or appears to have been committed in contempt of a plaintiff's rights. Golomb v. Korus, 261 Pa. Super. 344, 396 A. 2d 430 (1978). While the general rule historically has limited punitive damage claims to actions at tort, and not contract, Hoy v. Gronoble, 34 Pa. 9 (1859), or equity, People's National Bank v. Kern, 193 Pa. 59, 44 Atl. 280, (1889), that principle appears to be giving way to the more recent prevailing view that when a breach of contract is accompanied by malice, wantonness, or oppression, amounting virtually to an independent tort, punitive damages may be awarded. Lieberman v. Howard Johnson's, Inc. (No. 1), 68 D. & C. 2d 129 (1973). See also Richette v. Pennsylvania Railroad, 410 Pa. 6, 187 A. 2d 905 (1963).

We have found no cases in Pennsylvania addressing the question of whether punitive damages may be assessed in an equity action against an agent who violates his fiduciary duty to his principal for his own benefit. However, the following language from International Bankers Life Insurance Co. v. Holloway, 368 S.W. 2d 567 (1963) (Supreme Court of Texas) at page 584, is particularly pertinent to the present case:

Here defendant agency by its willful and malicious failure to inform plaintiff of the increased costs of settlement to her and thereafter taking her through another real estate settlement, whereupon her legal and financial positions were totally jeopardized should she fail to complete the settlement in question, constitutes a gross, willful, malicious and wanton disregard of the agency's fiduciary duty to plaintiff. Had the agency complied with its fiduciary obligation, plaintiff may well have taken other legal or contractual steps to complete settlement on time, even if defendant agency was unable to be ready on time; or alternatively,

plaintiff may have elected to cancel both transactions if the increased cost of settlement may have made that beneficial to her; or there may well have been other options available to her at that time that no one thought of then, nor that occur to us today. However, she should have had the information so that she could weigh and evaluate what options, if any were open to her. She may well have decided that paying the extra points was the best choice she had, but defendant's greedy fear that plaintiff might scuttle both settlements and the resultant commissions deprived plaintiff of any and all options, forcing her into the loss she here complains about. Such actions are unconscionable and a deterrent penalty is appropriate. Accordingly, we will award punitive damages.

"In the case at bar the plaintiff corporation has elected to sue for the profits gained by the defendants in breach of their duties as fiduciaries. The acts of defendants supporting the recovery are acts which equity considers to be wilful and fraudulent, regardless of what may have been the actual motives of the defendants; here, of course, the jury has found that the defendants acted with malice. The remedy elected by plaintiff should not preclude the recovery of exemplary damages, athough the remedy selected in relation to the actual harm done the plaintiff, together with the nature of the acts of the defendants, are proper considerations in weighing the amount of an exemplary damages award against a complaint of excessiveness and, indeed, may be such as not to justify an award of exemplary damages. *It is consistent with equitable principles for equity to exact of a defaulting corporate fiduciary not only the profits rightfully belonging to the corporation but an additional exaction for unconscionable conduct. There should be a deter-*

*rent to conduct which equity condemns and for which it will grant relief.* The limits beyond which equity should not go in its exactions are discoverable in the facts of each case which give rise to equitable relief." (Emphasis added.)

## CONCLUSIONS OF LAW

1. Plaintiff's claim is brought in equity and this court has proper jurisdiction over the parties in the subject matter.

2. Defendant John Forrest Kratz Agency, Inc., is a real estate broker duly licensed to practice in Pennsylvania under the Pennsylvania Real Estate Licence Act 1980, February 19, P.L. 15, §101 et seq; 63 P.S. §455.101 et seq.

3. Defendant John Forrest Kratz Agency, Inc., acted as agent for plaintiff in the transaction involving the sale by plaintiff of 112 Walnut Street, Silverdale, Bucks County, Pa. to Mr. James MacDonald and in plaintiff's purchase of 22 Unami Trail, New Britain Township, Bucks County, Pa., from Russell and Jean D'Aversa.

4. Defendant John Forrest Kratz Ageny, Inc., as plaintiff's agent, owed a fiduciary duty to plaintiff to exercise fidelity and good faith in all matters falling within the sphere of defendant Kratz's employment.

5. Defendant John Forrest Kratz Agency, Inc., was under a duty to give to plaintiff timely notice of every fact or circumstance which might have made it necessary for plaintiff to take measures for her security.

6. Failure to give plaintiff notice of the possible increases in the mortgage placement fee "points" constituted a dereliction of duty on defendant John Forrest Kratz Agency, Inc.'s behalf.

7. Failure to give plaintiff notice of the possible increase in the mortgage placement fee "points" constituted a concealment from plaintiff of a material fact of the real estate transaction.

8. Plaintiff is entitled to receive from defendant, John Forrest Kratz Agency, Inc., the sum of $2,870 representing the difference between the points actually paid and the points plaintiff agreed to pay.

9. Punitive damages are allowable where plaintiff has suffered actual injury as a result of defendants' unconscionable conduct, and where punitive damages will serve as a deterrent to such future conduct.

10. Plaintiff is entitled to receive from defendant, John Forrest Kratz Agency, Inc., punitive damages in the amount of $2,000.

## DECREE NISI

And now, October 1, 1982, defendant is ordered and directed to pay to plaintiff the sum of $4,870 representing reimbursement of the overpaid mortgage placement fee in the amount of $2,870 and punitive damages in the amount of $2,000, together with interest from August 22, 1980.

The prothonotary shall on praecipe enter the foregoing decree nisi as a final decree if no exceptions have been filed within ten days after the notice of the filing hereof.