Vercesi, Appellant, *v.* Petri.

Argued March 24, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Robbin Z. Wolf,* with him *W. Davis Graham,* for appellant.

*Charles B. Prichard,* with him *Meyer S. Sikov,* for appellee.

OPINION BY MR. JUSTICE STERN, April 17, 1939 :

Plaintiff, alleging that he and defendant were engaged as partners in the conduct of a restaurant and that defendant had evicted him from the business, brought a bill in equity for an accounting. Defendant denied the existence of the partnership and asserted that plaintiff was only an employee. A hearing was had and the chancellor found there was an oral agreement of partnership. This finding, supported by testimony and accepted by the court in banc, is conclusive on appeal. The chancellor, in his decree nisi, ordered an accounting, but the court in banc dismissed plaintiff's bill on the ground that he did not come into equity with clean hands.

The restaurant was operated as the "Hillcrest Inn"; the lease, liquor license and bank account were in the name of defendant, and all goods were purchased in his name. Plaintiff alleged in his bill that this arrangement was adopted because "plaintiff had previously suffered financial reverses which it was thought might injure the credit of the new enterprise." Plaintiff had been unsuccessful in business and had filed a petition in bankruptcy on which an adjudication was entered, but he did not proceed because of a lack of funds and the case was closed. In explanation of the reason why the assets of the new venture were placed in the name of defendant, plaintiff testified: "I was embarrassed about business. I was in bankruptcy. I don't want nothing in my name. I was afraid creditor stop the place. Might hurt the business. . . . I told Petri, 'If I go in business I can't have nothing in my name because I was in bankruptcy, bankruptcy might hurt the business. You get anything in my name creditors, maybe some suit, you know what

I mean.' " On cross-examination he was asked: "In other words, you put everything in Mr. Petri's name to defraud your creditors, is that right?" to which he answered, "No, sir." "Q. Didn't you say before you were afraid your creditors coming in and attaching anything you made in your business if it was in your name? A. I never said that. I said I was afraid of business, don't have no credit." The chancellor found that "All documents incident to the purchase and operation of the business were taken in the name of the defendant so that the plaintiff's adverse credit standing and his pending bankruptcy proceedings would not react unfavorably upon the new business." The court in banc, in the course of its opinion, said that "From the plaintiff's own testimony it is shown that the partnership . . . was entered into and so arranged by plaintiff as to hide and conceal from his creditors any assets or interest he might or could have therein," but the court did not sustain exceptions to any of the findings of fact of the chancellor.

Defendant maintains that the taking of title to the partnership property in defendant's name represented an intent on the part of plaintiff to evade and defraud his past creditors. Assuming, arguendo, that the record justifies such a conclusion, the question arises whether, under such circumstances, defendant is excused from accounting to plaintiff for the latter's interest in the partnership, or whether the "uncleanliness" of plaintiff's hands was sufficiently remote from the matter in suit to prevent defendant from profiting by it.

Equity will not aid a person to obtain relief from a situation resulting from the transfer of his property in fraud of creditors. Where property is thus conveyed, equity will not require the grantee to account. But the present case does not fall within the scope of this principle. Plaintiff did not enter into the partnership for the purpose of defrauding his creditors. The partnership itself was a proper enterprise. Had it been for an

illegal purpose a court of equity would not compel an accounting by one of the partners at the instance of the other. But its object was neither illegal nor fraudulent. When the question arose as to the name in which the business was to be conducted and in which the license, lease and bank account were to be carried, plaintiff desired—whatever his motive—that his name should be omitted. If his purpose was to conceal his interest from his existing creditors it was reprehensible and as to them fraudulent, but it would not affect the legitimacy of the enterprise, or make him an outlaw as far as his rights in regard to the partnership property were concerned. As to the partnership the concealment of his name was a collateral incident which did not vitiate the status of the partnership itself or so taint it as to preclude plaintiff from obtaining an accounting from defendant. One of the limitations of the doctrine of coming into equity with unclean hands is that the wrong-doing of the plaintiff must have been in reference to the very matter in controversy and not merely remotely or indirectly connected therewith: *Comstock v. Thompson,* 286 Pa. 457, 461; *Delaware, Lackawanna & Western R. R. Co. v. Stroudsburg, Water Gap & Portland Street Railway Co.,* 289 Pa. 131, 138; *Valley Smokeless Coal Co. v. Manufacturers' Water Co.,* 302 Pa. 232, 238. This limitation has been especially applied in cases where an accounting is sought from a partner. "It is admitted that there was a partnership, and that on dissolution the appellant became the liquidating partner. Under these circumstances his duty to account was imperative. The alleged acts and fraudulent representations of the plaintiff may affect the final result, but cannot dispense with the accounting": *Wilson v. Keller,* 195 Pa. 98, 100, 101. In *Frazier v. Mansfield,* 305 Pa. 359, 362, 363, the court said: "Since the dissolution of the firm F. H. Mansfield, with the assistance of Senator Mansfield, attended to winding up the firm's business. Under such circumstances regardless of plaintiff's alleged misconduct he

is entitled to an accounting," and, after quoting the above excerpt from the opinion in *Wilson v. Keller*, the court continued: "In this respect a bill for an accounting seems to be unlike other suits in equity. This is so because one partner cannot sue another at law on an unsettled partnership account. . . . Furthermore, the misconduct which will deprive a suitor of equitable relief must relate to the matter in suit. . . . While we do not approve of all of plaintiff's acts, nothing appears that should deprive him of the right to an accounting." See also *Robinson v. Goldberg*, 331 Pa. 401.

The order of the court below dismissing plaintiff's bill is reversed and the record is remanded with directions to make the decree nisi absolute. Costs of this appeal to be paid by appellee.