Hartman *v.* Cohn et al., Appellants.

Argued April 19, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Charles H. Weidner,* with him *Stevens & Lee,* and *Harry J. Halperin,* for appellants.

*Harry S. Craumer,* for appellee.

OPINION BY MR. JUSTICE HUGHES, June 30, 1944:

The Chancellor found the following material facts: Dwight Hartman for twenty-six years conducted a gentlemen's tailoring shop in Reading, Berks County, making men's clothing upon the order and to the measure of his customers. During that entire period he traded under the name of "Dundee Woolen Mills, Custom Tailors." No competitor used a similar name in that locality. For many years the defendants and their

predecessors conducted a business, which they termed nationwide, through stores throughout the United States, and have continuously used the names "Dundee", "Dundee Smart Clothes" and "Dundee Clothes." "Dundee" is attractive for use in the sale of clothing, because a city in Scotland of that name is noted for its linens and woolens. In 1939 the defendants opened a ready-to-wear clothing business in Reading, Berks County, and advertised under the name "Dundee Clothing Factory Sales Room." In the twenty-six years of operation the plaintiff had impressed the association of the name "Dundee" with his business and the public in Reading had come to understand the word to mean the tailoring shop and business of the plaintiff and to signify the men's clothing tailored by him. These facts were supported by competent evidence, affirmed by the court en banc, and will be considered conclusive on appeal: *Edirose Silk Manufacturing Company v. First National Bank and Trust Company*, 338 Pa. 139, 12 A. 2d 40.

The appellants contend that Dundee, being the name of a city in Scotland famous for its woolens, is not susceptible of exclusive appropriation as a trade name in the clothing business. The plaintiff, by advertising and marketing his products under that name, has given it great commercial value in the area which he exclusively served. Since the plaintiff used the name "Dundee" to establish, advertise and expand his business, even though it is a geographical name, he is entitled to protection in its use. In such a case, a geographical name may come to signify a different style, design and workmanship in suits and clothing, and a person who adds a new meaning to words should have the exclusive right to use them in this acquired sense. Any name, geographical or otherwise, applied to a product, becomes an asset to the person who advertises and markets that product as soon as the public begins to associate that name with that product. Where, as here, the name "Dundee" has been used exclusively in the clothing business in Berks County for a

long period of years by the plaintiff before the appellants came into that territory to sell clothing, the geographical term has taken on such a secondary meaning that the plaintiff will be protected in such use of it. "When the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another": *Quaker State Oil Refining Company v. Steinberg et al.*, 325 Pa. 273, 279, 189 A. 473.

Until the appearance of the defendants' store in Reading, the public only associated the trade name of "Dundee" with the business of the plaintiff. That two different corporations or individuals in widely separated areas used the same trade name to designate the same kind of business, should not prevent each from asserting his right to the use of that trade name in the territory in which he has exclusively operated. The learned trial judge aptly states: "It is no less true that the use of the word 'Dundee' by defendants creates a confusion among local customers, liable to be prejudicial to plaintiff, (1) through mere confusion among buyers, and occasional confusion in mail and package deliveries, (2) by giving to defendants' customers and therefore to defendants, the unfair advantage that their ready-made garments labeled 'Dundee' receive the credit of the established reputation of the Dundee-made, custom-tailored garments, and (3) by a certain reversed effect, namely, that plaintiff's customers necessarily in our opinion take a somewhat diminished satisfaction in wearing plaintiff's garments, if a cheap ready-made garment bearing practically the same label is sold by defendants in the same community. We find no difficulty in concluding that defendants' practices have constituted unfair competition, and are enjoinable."

It is not necessary, in order to justify judicial interference with the use of names, that there be an intent to get an unfair and fraudulent share of another's business; it is sufficient where the effect of the defendant's action, irrespective of his intent, is to produce confusion in the public mind and consequent loss to the complainant: *American Clay Manufacturing Company v. American Clay Manufacturing Company*, 198 Pa. 189, 47 A. 936; *Potter v. Osgood*, 79 Pa. Superior Ct. 397.

The court below having found sufficient reason to restrain the defendants in the use of "Dundee", took occasion to examine into the business of the plaintiff in its relations to the public, with reference to the use of the name "Dundee Woolen Mills, Custom Tailors", as well as the advertisement on the front of the plaintiff's store, reading "No Middleman's Profits." The record revealed that no woolen mill exists which the plaintiff represents or has represented, and the plaintiff conducts his business as do all custom tailors in Reading. The legend "No Middleman's Profits" is a deceptive statement, there being nothing in the manner in which the plaintiff transacted his business to justify it. The final decree, therefore, granted the relief for which the plaintiff prayed, conditioned upon: "(a) his registering himself in the fictitious name register in the Office of the Prothonotary of Berks County as 'Dwight Hartman', trading as 'Dundee Tailors', or some other appropriate legend containing the name 'Dundee', but excluding the word 'Mills', (b) his altering his shop signs, stationery, package legends, labels and other features in which his trade name appears to conform with the directions contained in (a) hereof, and (c) his ceasing to use the word 'Mills', and the slogan 'No Middleman's Profits', in connection with his business." The defendants claim that on account of the findings which supported the above decree, it appears that the plaintiff did not come into equity with clean hands and is, therefore, not entitled to relief against the actions of the defendants. In *Com-*

*stock v. Thompson,* 286 Pa. 457, 461, 133 A. 638, we said: "The maxim referred to is to be applied where the wrong-doing is in reference to the matter in dispute (*Dempster v. Baxmyer,* 231 Pa. 28), and must be connected with the controversy in litigation, so that it has in some way affected the equitable relations subsisting between the two parties, arising out of the particular transaction: *Hays' Est.,* 159 Pa. 381. . . . There are limitations to the application of the rule, and the maxim should not be applied where an inequitable result would be reached: 21 C. J. 175. If it appears that the conduct complained of was not wilful, but the wrongful act was committed under an honest belief as to its validity, the plaintiff is not without remedy (*Lewis's App.,* 67 Pa. 153), and the same has been decided where the injury inflicted on defendant was merely the result of negligence (*Bradley v. Jennings,* 201 Pa. 473), or the harm suffered as a result is small compared with the interest involved, and for which an accounting is asked (*Wilson v. Keller,* 195 Pa. 98), for it is not every reprehensible act which will bar the maintenance of the suit: 4 A. L. R. 65, note. Proof of misconduct as to part of a transaction does not necessarily prevent the assertion of rights arising from the remainder of it, which is legally unobjectionable: *Dempster v. Baxmyer,* supra; *Barnes v. Barnes,* 282 Ill. 593, 118 N. E. 1004." "When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy and make its inference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendants or the relief which he demands": *Belmont Laboratories, Inc., v. Heist et al.,* 300 Pa. 542, 554, 151 A. 15. Equity will not stand aside a plaintiff whose rights have been transgressed and permit them to be appropriated because of previous bad conduct, and, if the plaintiff offers reparation for what he has done, he may be granted relief, contingent upon repairing the injury he has inflicted: *Valley Smokeless Coal Co. v.*

*Manufacturers' Water Co.*, 302 Pa. 232, 153 A. 327. "One of the limitations of the doctrine of coming into equity with unclean hands is that the wrong-doing of the plaintiff must have been in reference to the very matter in controversy and not merely remotely or indirectly connected therewith": *Vercesi v. Petri*, 334 Pa. 385, 388, 5 A. 2d 563. The issue raised by the plaintiff concerned the use of "Dundee" in the clothing business in Berks County. The matters in which the court found the plaintiff acted inequitably referred to the public and his customers, and not to the defendants. However, since the Court had jurisdiction of the plaintiff, he followed the principle set forth in *Comstock v. Thompson*, supra, page 463: "Anyone going into a court of equity and asking its aid, whether that aid be such as could be obtained in a court of law, or whether it be of a character obtainable only in a court of equity, submits himself to the jurisdiction of the court, and, in asking its aid, subjects himself to the imposition of such terms as well established principles would require." The decree entered by the court below was entirely proper.

The decree is affirmed at the cost of the appellants.