Louis GAUDIOSI, Charles Schwartz, and Randolph Phillips, individually and on behalf of all other stockholders of the Pennsylvania Railroad Company similarly situated, Plaintiffs,

v.

Walter S. FRANKLIN, Richard K. Mellon, Robert T. McCracken, C. Jared Ingersoll, James E. Gowen, Philip R. Clarke, James M. Symes, John A. Diemand, John B. Hollister, Lammot du P. Copeland, Donald Danforth, R. George Rincliffe, William L. Day, Otto N. Frenzel, Fred Carpi, David C. Bevan, James P. Newell, Directors; Bayard H. Roberts,

and

The Pennsylvania Railroad Company, a corporation, incorporated under the laws of the Commonwealth of Pennsylvania, Defendants.

Civ. A. 24654.

United States District Court
E. D. Pennsylvania.

Aug. 18, 1958.

Randolph Phillips, Pro se, Abrahams & Loewenstein, Philadelphia, Pa., for Charles Schwartz and Louis Gaudiosi.

Barnes, Dechert, Price, Myers & Rhoads, Philip Price, Philadelphia, Pa., for defendants.

KRAFT, District Judge.

The present action seeking equitable relief is the second suit filed by the plaintiffs relating to a proxy contest for the office of director of The Pennsylvania Railroad Company. Six directors were to be elected for four year terms at the 1958 annual meeting and election of stockholders. The company management supported its six nominees and opposed Randolph Phillips, one of the plaintiffs, the seventh nominee. After the election on May 13, 1958 the judges of election determined that the six management candidates received the highest number of votes. This suit in equity was filed May 9, 1958, and, on June 4, this court, to preserve the status quo, entered a temporary order restraining the six apparently successful management candidates from assuming the offices of director until further order.

Count IV of the complaint embodies, inter alia, a class action in which the plaintiffs assert a representative claim that the directors of the defendant company are liable to it for improper expenditures of corporate funds to promote the candidacies of the six management nominees.

An order has heretofore been entered directing a rehearing in the class action and a trial of the issues therein separate from all other claims asserted in the plaintiffs' complaint. The findings of fact hereinafter made and the conclu-sions of law hereinafter reached relate to all of the plaintiffs' claims except that representative claim asserted in the class action in count IV of the complaint.

From the admissions in the pleadings, stipulations of counsel and the evidence, I find the following:

## Facts

1. At the time this action was instituted on May 9, 1958 the plaintiffs, Louis Gaudiosi, Charles Schwartz and Randolph Phillips, were citizens of the State of New York and were, respectively, the owners or the beneficial owners of 500, 1,400 and 500 shares of the capital stock of The Pennsylvania Railroad Company, which stock then had a market value of approximately $12 per share.

2. The defendant, The Pennsylvania Railroad Company, is a Pennsylvania corporation, having its principal office in Philadelphia, Pennsylvania.

3. Defendant, Bayard H. Roberts, is the Secretary of, and each of the other individual defendants is a Director of, The Pennsylvania Railroad Company and a citizen of a state other than New York.

4. Four of the individual defendants, James M. Symes, C. Jared Ingersoll, R. George Rincliffe and Bayard H. Roberts, are also the proxy holders named in the proxy forms solicited by the management of the defendant company for its 1958 Annual Meeting and Election.

5. At the 1958 annual meeting of the stockholders of the defendant company six directors were to be elected for four years expiring in 1962. For these offices the management nominated and sought the election of Philip R. Clarke, Lammot duP. Copeland, Donald Danforth, Walter S. Franklin, James M. Symes, defendants, and of Dr. Gaylord P. Harnwell, who is not a defendant.

6. On March 25, 1958 there were approximately 147,344 record owners and 20,300 beneficial owners of the outstanding stock, resident within and outside the United States. The number of record owners and beneficial owners thereof was substantially unchanged on April 3, 1958, the record date for determination

of stockholders entitled to vote in the 1958 annual election of directors of the defendant company. On April 3, 1958 there were 13,167,154 outstanding shares of defendant company's stock.

It was not reasonably to be expected that a substantial majority of the record owners or beneficial owners would attend the 1958 annual meeting and election in person. It was reasonably to be expected that a substantial majority of them would exercise their voting rights by proxy.

7. The plaintiff, Randolph Phillips, (hereinafter called Phillips) became a candidate for election to the 18 member board of directors of the defendant company at the solicitation of Mr. Lewis D. Gilbert, the extent of whose stock ownership in the defendant company on April 3, 1958 is undisclosed by the evidence.

8. Phillips was aware that the office of director of the defendant company to which he aspired paid no fee, salary or other form of compensation.

9. Phillips has spent more than $3,000 in expenses to advance his candidacy for election to the office of director. In view of Phillips' interest as a litigant and the complete absence of corroboration which should have been susceptible of ready production, I discount, in part, Phillips' testimony that he spent in excess of $20,000; that plaintiff, Gaudiosi, spent in excess of $2,000 and that Melvin J. Fox, an associate, spent more than $2,000.

10. Article XVII, Section 2 of the Constitution, P.S. of the Commonwealth of Pennsylvania and the Act of June 15, 1874, P.L. 289, § 1, 67 P.S. § 62 require the defendant company to maintain certain records relating to the ownership and transfer of the company's stock and give to the company's shareholders the right *to inspect* those records. The Act of 1874 provides:

"Every railroad or canal corporation, organized in this state, shall maintain an office therein for the transaction of its business, where transfers of its stock shall be made and books kept for the inspection, by any stock or bondholder or any other person having any pecuniary interest in such corporation, in which shall be recorded the amount of capital stock subscribed or paid in and by whom, the names of the owners of its stock and the amounts owned by them respectively, the transfers of said stock, and the names and places of residence of its officers."

11. Before, on and after April 3, 1958 the defendant company kept no books, *as such*, in which the names of the owners of its stock and the amounts respectively owned by them were recorded. In lieu thereof the names of its stockholders and the amounts of stock owned by them were recorded by a modern system of cards and plates.

One set of cards (I. B. M. cards) consisted of one card for each stockholder and legibly disclosed the name, address and company account number of the stockholder, the number of shares acquired, the dates of acquisition and the number of shares currently owned. Supplementing this set was a set of addressograph plates on which, for imprinting purposes, were inscribed only the names, addresses and account numbers of the respective stockholders. By way of supplement still another set of I. B. M. cards legibly disclosed the account number and the number of shares therein and by perforations intended to be interpreted by the I. B. M. machine also indicated the number of shares owned and other pertinent data other than the stockholder's name.

12. John B. Prizer, Esq. (Prizer), a Vice-President and General Counsel of defendant company advised Phillips, by letter dated March 14, 1958, that company stockholders of record as of April 3, 1958 would be eligible for solicitation for proxies. He also informed Phillips that as of January 1, 1958 there were 112,949 stockholders who owned 1 to 99 shares; 30,647 who owned 100 to 999 shares; 872 who owned 1,000 or more shares. Prizer also then informed Phil-

lips that brokers held shares for 19,000 beneficial owners and bankers held shares for 1,300 beneficial owners.

13. Phillips informed the defendant company, by letter dated April 4, 1958, of his proposed delivery to it on April 7, 1958 of 148,000 proxy forms. He requested defendant company to address these cards, or so many of them as were required for the purpose, to all record stockholders holding 100 shares or more; thereafter, to proceed to address the remaining proxy cards to all holders of 1 to 99 shares. Phillips further instructed defendant company, upon receipt by it of his proxy solicitation material, to mail, pursuant to rule X–14A–7 of the Securities and Exchange Commission one set each of that material, including a letter dated April 9, 1958 and a proxy statement dated April 3, 1958, a business reply envelope and addressed proxy form to each stockholder owning 100 or more shares. Phillips further requested that as soon as the proxy forms for such holders were addressed and the soliciting material received the material be mailed without delay for completion of addressing and mailing to the holders of 1 to 99 shares.

Phillips instructed Prizer, by telegram dated April 10, 1958, to address two additional sets of proxy forms to all holders of 100 or more shares after completion of addressing the first such set.

14. Phillips was experienced in proxy contests and thoroughly familiar with all Securities and Exchange rules applicable thereto.

15. Rule X–14A–7(b) (1) provides: "Copies of any proxy statement, form of proxy or other communication furnished by the security holder shall be mailed by the issuer to such of the holders of record specified in (a) (1) as the security holder shall designate. The issuer shall also mail to each banker, broker, or other persons specified in (a) (2) above a sufficient number of copies of such proxy statement, form of proxy or other communication as will enable the banker, broker or other person to furnish a copy thereof to each beneficial owner solicited or to be solicited through him."

Rule X–14A–7 imposes upon the issuer the obligation to mail, with reasonable promptness, any such material which is furnished by the security holder (Phillips) after receipt of a tender of the material to be mailed, of envelopes or other containers therefor and of postage or payment for postage.

Subsection (c) of this rule provides that in lieu of performing the acts thereinbefore specified, *the issuer may, at its option,* furnish promptly to such security holder a reasonably current list of the names and addresses of such stockholders of record specified in subsection (a) (1) and in subsection (a) (2).

16. Phillips later directed the defendant company, by telegram dated April 9, 1958, to carry out his April 4 instructions with respect to all holders of 100 or more shares. Prizer, on the same day, acknowledged receipt of the telegram and Phillips' request to mail at that time only to holders of 100 or more shares. Conformably to Phillips' directions defendant company mailed two sets of addressed proxy forms to stockholders holding 100 or more shares and one set to stockholders holding less than 100 shares.

17. Defendant company was ever ready and willing to mail to the addressees Phillips' third set of proxy forms addressed to stockholders holding 100 or more shares upon receipt of Phillips' instructions. Phillips never gave instructions for the mailing of the third set.

18. On April 12 or 13, 1958 the defendant company prepared a set of cards, in triplicate, showing the names, addresses and shareholdings of each of the approximately 34,000 stockholders who owned 100 or more shares. Two sets of these cards were sent to Georgeson and Company on April 15, 1958 for use by that company in solicitation of proxies for management candidates. The third set was retained by the defendant company.

19. On April 18, 1958 Phillips orally inquired of Prizer how long before the annual meeting the stockholder list would be available for Phillips' inspection.

Prizer replied by letter on April 21, 1958 that "It is our practice to prepare the list a day or two before the meeting and to have it available at the annual meeting and election. However in view of the contest this year we have under consideration a possible change in this practice. If it is decided to change the practice, I will advise you accordingly".

Prizer did not thereafter advise Phillips of any change in the practice.

20. Phillips telegraphed a request to Prizer on April 21, 1958 to *deliver* to Phillips at Room 801, 499 Broadway, New York, copies of the same list of names, addresses and shareholdings which the defendant company had given to Georgeson and Company. In reply to Phillips' request, Prizer stated: "With regard to copies of lists of names, addresses and shareholdings furnished to solicitors, you recognize, I am sure, the limitations contained in the Securities and Exchange Commission Rules under which you are proceeding."

Defendant company did not comply with Phillips' request.

21. For several years prior to 1958 the defendant company had an intra-company program under which approximately 265 of its upper-echelon personnel were assigned the task of calling upon certain of the larger stockholders in various areas of the United States. Prior to the 1958 meeting and election a meeting of this group was called, which approximately 255 attended. At the meeting those present were requested to communicate with the various stockholders who had previously been assigned to them and to endeavor to persuade those stockholders to sign and return their proxies to vote for the management candidates.

22. On April 21, 1958 Phillips demanded, by telegram, that the company deliver to him copies of the lists of names, addresses and shareholdings of the shareholders upon lists assigned to company personnel. The defendant company refused to comply with this request.

23. At the request of the judges of election, who wished to make some preliminary analyses, the defendant company, by use of the addressograph plates and I. B. M. cards, prepared one printed list of stockholders prior to April 29, 1958. This list was delivered to the judges of election on April 29, 1958.

24. Phillips visited the office of the defendant company at 15 North 32nd Street, Philadelphia on April 30, 1958 and, while there, asked Mr. Matthew J. Gerdelmann (Gerdelmann) if there was a stockholders' *list*. Gerdelmann was then Assistant Supervisor of stockholders records in the office of the Secretary of the defendant company. Gerdelmann told Phillips that there was such a *list*. Phillips then asked Gerdelmann if Phillips could see the *list* and Gerdelmann told him it was not available; that it was in the hands of the judges. Gerdelmann showed Phillips an addressograph plate of the type used to imprint stockholders' names and addresses in printing the list.

The list of stockholders in the judges' possession was the only *list* of stockholders of which Gerdelmann then had knowledge. Phillips' inquiry and request to Gerdelmann related to a printed or prepared *list* such as Phillips believed had been furnished to Georgeson and Company or such as Phillips understood would be prepared for the stockholders' meeting. Phillips' inquiry and request was not intended by him to relate and did not relate to the defendant company's permanent card record which cataloged, inter alia, the names, addresses and holdings of stockholders.

25. Carroll R. Wetzel, Esq. (Wetzel) of defendants' counsel, by letter dated May 1, 1958 informed Robert D. Abrahams, Esq. (Abrahams), of plaintiffs' counsel that Wetzel had not the slightest doubt that defendant company would honor any proper request by the plain-

tiffs or by any other stockholder to inspect its corporate records relating to the identity of stockholders and the amounts of their holdings. At the same time Wetzel declined compliance with Phillips' April 20 telegraphed request to Prizer demanding delivery to Phillips in New York of copies of the list furnished Georgeson and Company and other company employed proxy solicitors.

26. On May 2, 1958 Norman J. Kalcheim, Esq. (Kalcheim) of plaintiffs' counsel, made an oral request by telephone to Wetzel that defendant company deliver to Phillips copies of all *lists* of shareholders which had been delivered by the company to Georgeson and Company. Wetzel refused Kalcheim's request by letter dated May 2, 1958.

On the same day Wetzel informed Kalcheim that the Secretary of defendant company had authorized Wetzel to state that the company would make available for inspection by the plaintiffs the company's records of share ownership upon receipt of Wetzel's opinion that it would be proper so to do. Wetzel told Kalcheim that Wetzel would give such an opinion when he received a written request signed by a stockholder stating a proper purpose for the desired inspection and that he considered solicitation of proxies for the forthcoming meeting a proper purpose. Wetzel further informed Kalcheim that if Kalcheim would provide him with such a written request it would be complied with promptly. Wetzel also told Kalcheim that defendant company realized that the plaintiffs might desire clerical assistance in any inspection of the records and that the company would accord any shareholder the opportunity to bring with him a reasonable number of clerks subject to the company's approval of the persons to be permitted access to the records and subject to reasonable regulation of the time and manner of inspection.

Later on the same day Kalcheim orally advised Wetzel by telephone that the plaintiffs would not be satisfied to inspect the records of the company and that they desired that the company deliver to Phillips the set of proxy forms which the company, at Phillips' request, had theretofore addressed to holders of 100 shares or more. Kalcheim thus reiterated Phillips' telegraphed request of April 20. By letter of the same date Wetzel advised Kalcheim that those forms had been addressed by the company pursuant to a request made by Phillips under S.E.C. rule X–14A–7, which provided for a mailing by the company to the addressees. Wetzel informed Kalcheim that the defendant company continued to await Phillips' instruction for the mailing of these proxy forms.

27. On May 8, 1958 the defendant company began the preparation of two printed lists of its stockholders which were completed on May 12. Each list consisted of two parts. One part comprised 24 volumes in which appeared the account number, in numerical sequence, and the corresponding name and address of each stockholder. Each sheet thereof contained approximately 10 names and addresses. The second part consisted of 2 volumes, prepared by an I.B.M. machine, which disclosed the same account numbers, in numerical sequence, and the number of shares held by that account.

The defendant company prepared these two lists for use at the annual stockholders meeting.

28. None of the plaintiffs requested the right or opportunity, prior to the annual stockholders meeting and election on May 13, 1958, to inspect the defendant company's records recording its stockholders and their holdings. Such an inspection by the plaintiffs would have entailed an examination of only one set of I.B.M. cards, one card per stockholder.

29. Conformably to its customary practice and procedure the Securities and Exchange Commission "cleared" a form of letter proposed to be addressed by the defendant James M. Symes

(Symes), President of the defendant company, to the stockholders of the defendant company, under date of April 16, 1958, together with a proposed accompanying statement with respect to proxy solicitation by company management.

30. "Clearance" by the Securities and Exchange Commission was, in fact, an omission by the Commission to disapprove such forms, rather than an express approval thereof.

31. After Commission "clearance" Symes' letter of April 16, relating to Phillips' candidacy and the accompanying statements were mailed to the stockholders of defendant company at its expense.

32. Rule X–14A–9 of Regulation X–14A promulgated by the Securities and Exchange Commission under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq. provides:

> "No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication written or oral containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

33. Symes' letter of April 16 stated that Phillips' proxy solicitation material, including a blue form of proxy, had been received and that, by request " * * (t)his mailing was limited to about 22% of our 147,000 stockholders of record, viz., *those who hold 100 shares or more.* Phillips has not asked us to mail any material to the other 78% of our stockholders."

■ At the time this statement was made it was true. The defendants' omission to state in that letter that Phillips had, prior to April 16, 1958, directed that his proxy forms be *addressed* with the names and addresses of all stockholders owning 1 to 99 shares was not an omission of a material fact. Phillips' direction to *address* was not a direction to *mail.*

34. Symes' letter of April 16 also contained the following: "In his statement of qualifications for office, Mr. Phillips has made use of various self-conferred, high-sounding titles to describe his career; but he does not indicate that he has ever been a director or officer of any company to which he refers."

■ The titles used by Phillips in his proxy material to describe his career were high-sounding, but, in most instances, were unaccompanied by any statement of the duties or responsibilities involved. Some of such titles were self-conferred; at least two were not. The burden was upon Phillips to establish the falsity of Symes' statement that various titles so used by Phillips were self-conferred. Phillips attempted to meet this burden, for the most part, by his own uncorroborated testimony. In view of Phillips' interest as a party and the paucity of corroboration, I find that Phillips' burden on this issue was not met, except in two or three instances involving consultative capacities.

35. Symes' letter of April 16 contained the following: "His statement of his qualifications does *not* disclose that, contrary to his express representations in a statement filed with the Securities and Exchange Commission on April 9, 1958, he in fact started a law suit against your company on the very same day in the Federal District Court in Philadelphia."

On April 9, 1958 Phillips and his associates filed a statement with the Securities and Exchange Commission, pursuant to its regulations and to the laws of the United States, in which it was stated that they did not intend to institute any litigation.

█ The foregoing statement in Symes' letter was not false. It was not a material omission in Symes' letter to omit to state that the statement filed by Phillips on April 9 was signed on April 3. By filing his statement on April 9, Phillips intended to give effect to the intention expressed by his signature thereto on April 3, 1958.

36. Phillips' joinder as a party plaintiff in Civil Action 24456 was contrary to the representation made in the statement filed by him with the Securities and Exchange Commission on April 9.

█ 37. In failing to state that Phillips was not employing proxy solicitors, Symes' letter of April 16 did not omit a material fact.

█ 38. In failing to state that Phillips was unable to make any solicitation similar to that being made by Georgeson and Company and by other persons soliciting on behalf of the management candidates because of the company's denial to Phillips of copies of the lists furnished to them, Symes' letter of April 16 did not omit a material fact.

39. Symes' letter of April 16 did not falsely or misleadingly state any material fact or omit to state any necessary material fact.

40. Conformably to its practice and procedure the Securities and Exchange Commission "cleared" a form of letter proposed to be addressed by Symes, to company stockholders under date of May 2, 1958.

41. After Commission "clearance", Symes' letter of May 2, 1958, commenting upon Phillips' candidacy, was mailed to all company stockholders at its expense.

On and after April 26, 1958 Phillips caused to be mailed to approximately 34,000 stockholders of defendant company his own proxy material which included a letter dated April 26, 1958 and a reprint of a letter by Lewis D. Gilbert and John J. Gilbert dated April 8, 1958.

Phillips' April 26 letter is captioned "Why Does One Nominee So Frighten 18 Directors?" Symes' May 2 letter, after referring to the stockholders' probable receipt of Phillips' April 26 letter, states "This new letter asks 'Why does one nominee so frighten 18 Directors?' Our answer to that is, we are not frightened at all but are concerned because *we think it would be a tragedy if a man like Phillips were elected to your Board of Directors.* We wish to remind you that Phillips has never served as an officer of any company, has never served as a director of any company, has never had to meet a payroll. In short, in our opinion, he has no experience or qualification to serve as a director."

Symes had sufficient knowledge of and information about Phillips' background, experience and frequent participation in corporate litigation to form an opinion that Phillips had no adequate experience or qualification to serve as a director of the defendant company and to form a belief that it would be tragic to elect Phillips to that post.

█ Symes' statement of opinion and belief was not false or misleading with respect to any material fact at the time and in the light of the circumstances under which the opinion and belief were formed and stated.

42. Symes' letter of May 2 stated "In the law suit which he and his two co-plaintiffs started against your company within the last month, it was publicly stated on his behalf in the District Court in Philadelphia that *Phillips has no program for the benefit of The Pennsylvania Railroad.*"

In Civil Action 24456 Phillips appeared pro se. The other plaintiffs were represented by Mr. Abrahams. During the hearings in that action Phillips, at times, spoke for himself. At other times, with Mr. Phillips' acquiescence, Mr. Abrahams examined witnesses on his behalf and spoke for him. On April 17, 1958, during argument in that proceed-

ing, Mr. Abrahams and Mr. Phillips agreed so to divide the argument that each would address himself to certain subject matters. During argument Mr. Abrahams, in Mr. Phillips' presence, stated "He (Phillips) has no program which he has stated for reform of Pennsylvania Railroad". The trial judge inquired "You mean he has no program or he has no program which he has stated?" Mr. Abrahams replied "He has no program which he has stated, but actually I believe he has no program."

In view of the close association between Mr. Abrahams and Mr. Phillips in the conduct of Civil Action 24456 I infer that Mr. Abrahams spoke with knowledge.

Despite Phillips' frequently demonstrated capacity for self-expression and the promptness and vigor with which he unfailingly asserted what he believed were his rights, Mr. Phillips did not interrupt Mr. Abrahams at the time of that statement nor did he, during that proceeding, challenge Mr. Abrahams' authority to make that statement on his behalf nor did he then or thereafter in that proceeding disavow the truth of Mr. Abrahams' statement. I find that Mr. Abrahams' statement was made in Phillips' presence, with his authority and approval.

■ The statement in Symes' May 2 letter in respect thereof was not false or misleading with respect to a material fact at the time and in light of the circumstances under which the statement was made.

■ 43. In failing to state the number of years of services covered by Phillips' fee application in the United Corporation case, Symes' letter of May 2, did not omit to state any material fact necessary in order to make the statements therein not false or misleading.

44. In failing to state all of the affirmative findings made by the Securities and Exchange Commission with respect to Phillips' fee application in the United Corporation case and the findings made

by Chief Judge Leahy of the District Court of Delaware, Symes' letter of May 2 did not omit to state material facts necessary in order to make the statements in the May 2 letter not false or misleading.

45. Symes' May 2 letter accurately quoted that part of the opinion of the Securities and Exchange Commission in the United Corporation case which the letter purported to quote.

46. The United States District Court for the District of Delaware, on December 30, 1957, filed an order which was otherwise unreported. Defendants were, on May 2, 1958, wholly unaware of the filing of the order.

Paragraph 2 of the order directed "That the Commission's findings of fact and conclusions of law in its findings, opinion & order dated June 28, 1956 with respect to Randolph Phillips and Joseph B. Hyman, Esq. are hereby annulled and voided * * *."

Paragraph 7 of the same order provided, however, "The provisions of the Plan relating to the payment or denial of fees and expenses and the Findings, Opinion & Order dated June 28, 1956 of the Commission should be modified in accordance with the Opinion and Judgment of the Court of Appeals filed October 24, 1957 and the Order therein and as so modified, approved and enforced."

Paragraph 9 of the same Order, moreover, provides "This proceeding is hereby remanded to the Commission for the purpose of modifying its Findings, Opinion & Order dated June 28, 1956 in accordance with the terms and provisions of this Order, and upon notice of the entry of this Order the Commission is directed so to modify said Findings, Opinion & Order."

The language of the Order of December 30, 1957 was that of Phillips who wrote the form of decree which was submitted to the Delaware District Court.

47. It is judicially noted from the opinion of the Court of Appeals for the Third Circuit (In re United Corporation,

249 F.2d 168) that, in the United Corporation case, Phillips made three claims for compensation and for expenses therein as follows:

| | Compensation | | Costs or Expenses |
|---|---|---|---|
| Claim (1) | $ 15,000 | plus | $ 7,558 |
| Claim (2) | $ 24,000 | plus | $15,857 |
| Claim (3) | $249,120 | plus | $26,925 |
| Total | $288,120 | plus | $50,340 expenses. |

The $249,120 claim for compensation was found to duplicate the claims for compensation of $15,000 and of $24,000.

The claims for reimbursement for costs or expenses in the respective sums of $7,558 and $15,857 were disallowed and eliminated.

The Commission had allowed the flat sum of $50,000 to Phillips for all services and expenses without separation of compensation from expenses. The Court of Appeals found that the third claim of Phillips for expenses in the amount of $26,925 was a reimbursable claim. On Phillips' claim for compensation in the sum of $249,120 the Court of Appeals determined that Phillips was entitled to compensation in the sum of $50,000.

The Court of Appeals reversed the District Court and remanded the case to the District Court with directions to proceed in accordance with the opinion of the Court of Appeals. Nothing in the opinion of the Court of Appeals indicates a direction by that Court to the District Court to annul and void the language of the Securities and Exchange Commission quoted in Symes' May 2 letter.

Of Phillips activities the opinion of the Court of Appeals makes express reference to Phillips' 1943 unsuccessful proxy contest (at page 172); Phillips' second unsuccessful proxy contest in 1944 (at page 172); Phillips' unsuccessful opposition to the 1944 Exchange Plan and Phillips' unsuccessful appeal from the Commission's approval of the Exchange Plan to the United States Court of Appeals for the Second Circuit which held that his proposal had no bearing on the approval of the Plan (at page 172); the dismissal, by stipulation, of Phillips' petition for review of another Commission-approved Plan (at page 172); Phillips' unsuccessful opposition to the application for modification of the Commission's order in 1947 (at page 172); Phillips' unsuccessful proxy fight against United Management in 1947 (at page 172); Phillips' unsuccessful opposition in 1947 to another United Plan (at page 172); Phillips' unsuccessful opposition in 1947 to another Plan proposed by United (at page 172); the dismissal by consent, for want of prosecution, in 1957 of Phillips' petition for review of the Commission's order declaring United had ceased to be a holding company (at page 173).

The statements in Symes' May 2 letter relating to the Phillips-United Corporation controversies and litigation were not, at the time made and in the light of the circumstances under which they were made, false or misleading with respect to any material fact nor did they omit to state any material fact necessary in order to make the statements therein not false or misleading.

48. The defendants' knowledge of and information about Phillips' background, experience and frequent prior participation in corporate litigation was sufficient to convince them that his election to the Board of Directors of the defendant company would be harmful to the interests of the stockholders and that under the guise of "independence" Phil-

lips would only interfere with the united effort which the Board of Directors believed it was then making to solve the problems facing the defendant company and other railroads.

The statement in Symes' letter of May 2 expressing that conviction was not, at the time it was made and in light of the circumstances under which it was made, false or misleading with· respect to any material fact.

49. The footnote on Symes' May 2 letter reads

"Remember—the latest proxy governs. Pennsylvania Railroad proxy is enclosed. Sign it! Date it! Return it!"

This was intended to and did serve to distinguish that soliciting group from Phillips' soliciting group, which designated itself on its proxy forms "Proxy solicited by the independent stockholders of The Pennsylvania Railroad Company."

The proxy to which this footnote referred plainly stated "Proxy solicited by management for 1958 annual meeting and election."

 This footnote statement was not, at the time it was made and in light of the circumstances under which it was made, false or misleading with respect to any material fact nor did it omit to state any material fact necessary in order to make the statement not false or misleading.

50. The defendant company expended the following amounts for the following purposes in support of the candidacies of the management candidates for director:

First Mailing—Dated March 26

| | | |
|---|---|---|
| Printing | $4,832.50 | |
| Mailing | 6,413.78 | $11,246.28 |

Second Mailing—Dated April 2

| | | |
|---|---|---|
| Printing | $4,703.61 | |
| Mailing | 6,468.15 | 11,171.76 |

Third Mailing—Dated April 16

| | | |
|---|---|---|
| Printing | $6,285.30 | |
| Mailing | 6,499.31 | 12,784.61 |

Fourth Mailing—Dated May 2

| | | |
|---|---|---|
| Printing | $3,867.30 | |
| Mailing | 6,420.00 | 10,287.30 |

Thank You Note

| | | |
|---|---|---|
| Printing | $ 750.00 | |
| Mailing | 3,547.10 | 4,297.10 |

| | |
|---|---|
| Solicitation of proxies by Brokers and Nominees | 18,382.28 |
| Solicitation of proxies by Georgeson & Co. | 37,718.97 |
| Estimated total return postage for proxies | 14,244.00 |
| Labor and IBM machine costs for handling returned proxies | 40,735.54 |

51. Following the 1958 annual meeting and election of the defendant company on May 13, 1958, the judges of election, on June 4, 1958, filed with the company their certificate of election which determined the votes cast for each candidate and certified and declared that Philip R. Clarke, Lammot du P. Copeland, Donald Danforth, Walter S. Franklin, James M. Symes and Dr. Gaylord P. Harnwell had been elected directors of the company. The judges reported that the votes cast for each candidate were as follows:

| Candidate | Number of Votes |
|---|---|
| Philip R. Clarke | 9,004,767 |
| Lammot du P. Copeland | 9,004,767 |
| Donald Danforth | 9,004,767 |
| Walter S. Franklin | 9,004,766 |
| James M. Symes | 9,004,770 |
| Dr. Gaylord P. Harnwell | 9,004,767 |
| Randolph Phillips | 5,997,982 |

52. Prior to April 1, 1958 the New York Times published a news account stating, in effect, that the Swiss Bankers Association had urged its member banks to vote in favor of management whenever they voted proxies on behalf of stockholders in American corporations. Phillips had knowledge of the content of this news article prior to April 30, 1958.

53. Between April 3 and April 30, 1958, Credit Suisse, a Swiss bank, was the registered owner of 362,156 shares of the defendant company's stock.

54. Between April 3 and April 30, 1958, Swiss Bank Corporation, a Swiss bank, was the registered owner of 444,657 shares of the defendant company's stock.

55. On April 30, 1958, Phillips knew that Credit Suisse was the owner or beneficial owner of a substantial number of shares of the defendant company's stock, which he then believed to be 360,917 shares.

56. On April 30, 1958, Phillips knew that Swiss Bank Corporation was the registered or beneficial owner of a substantial number of shares of the defend-ant company's stock, which he then believed to be 360,918 shares.

57. On April 30, 1958, Phillips believed that Credit Suisse had executed and intended to deliver, or intended to execute and deliver to the management proxyholders a proxy or proxies to vote in favor of the six management nominees the stock of which it was registered or beneficial owner.

58. On April 30, 1958, Phillips believed that Swiss Bank Corporation had executed and intended to deliver or intended to execute and deliver to the management proxyholders a proxy or proxies to vote in favor of the six management nominees the stock of which it was registered or beneficial owner.

59. On April 30, 1958, without prior submission thereof to the Securities and Exchange Commission and without obtaining "clearance" thereof from the Commission, Phillips sent to Credit Suisse and to Swiss Bank Corporation identical telegrams as follows:

"I understand that your Bank which is the nominee for 360,918 shares of Pennsylvania Railroad Co. capital stock intends to vote said stock for the 6 management nominees for director at the Railroad's annual election to be held on May 13, 1958, without informing the owners of said stock of the contest for directors now existing and without giving them an opportunity to determine for themselves whether or not their stock should be voted and without giving them an opportunity to vote for myself as the 1 non-management nominee for director, or for the 6 management nominees, or for 5 or less of the management nominees and the 1 non-management nominee. Such arbitrary and undemocratic action by your Bank not only violates American equitable and common law principles applicable to banks when they act as fiduciaries but also violates the rules of the Securities and Exchange Commission and New York Stock Exchange as

well as American banking practices applicable to all stock exchange brokers and banks in this country. It is a violation of the concept of a free and fair election on a fully informed basis, it constitutes a fraud upon the stockholders, and can only be of comfort to dictators and to totalitarians in or out of corporate management.

"Such action by your Bank also constitutes a combination with the Pennsylvania Railroad management and other company managements that is prohibited under the antitrust laws of this country and which are applicable to your Bank since it is doing business in the United States.

"Such improper practices which already have been criticised in the United States Senate threaten to damage immeasurably myself and many thousands of associated stockholders. Unless you give me prompt assurance of the immediate termination of these practices I will reluctantly be compelled to take prompt and appropriate legal action in the courts. Kindly advise me by return wire of your answer to this telegram."

The foregoing telegrams contained statements some of which, at the time and in the light of the circumstances under which they were made, were false and others of which, at the time and in the light of the circumstances under which they were made, were misleading with respect to material facts. The telegrams also omitted to state material facts necessary in order to make the statements therein not false or misleading.

60. The telegrams were deliberately and maliciously sent by Phillips to Credit Suisse and Swiss Bank Corporation with an intent to intimidate each bank and to cause each bank to withhold, fail or refuse to execute or deliver a proxy or proxies to vote its stock in favor of the management nominees.

61. When authorized officials of the Securities and Exchange Commission became aware of Phillips' action in sending the aforesaid telegrams without prior submission thereof they directed him to file copies thereof as soliciting material. Phillips did so on May 9, 1958, under protest.

62. Rule X–14A–1 of the Securities and Exchange Commission defines "solicit" and "solicitation" to include, inter alia, "(3) the furnishing of a form of proxy *or other communication* to security holders *under circumstances reasonably calculated to result in the* procurement, *withholding* or revocation *of a proxy.*" (Emphasis supplied.)

63. Rule X–14A–6(b) provides "Three preliminary copies of any additional soliciting material, relating to the same meeting or subject matter, furnished to security holders subsequent to the proxy statement shall be filed with the Commission at least two days, (exclusive of Saturdays, Sundays or holidays) prior to the date copies of such material are first sent or given to security holders, or such shorter period prior to such date as the Commission may authorize upon a showing of good cause therefor."

Subsection (c) of the same rule provides "Four definitive copies of the proxy statement, form of proxy and all other soliciting material, in the form in which such material is furnished to security holders, shall be filed with, or mailed for filing to, the Commission not later than the date such material is first sent or given to any security holders. * * * "

64. Upon submission by Phillips on May 9 of the text of the telegrams sent by him on April 30 to Credit Suisse and to Swiss Bank Corporation the Commission's staff expressed its disapproval and Phillips either as a result thereof or in anticipation thereof sent to each of the banks, on May 9, 1958 the following telegram: "I hereby withdraw all statements in my telegram to you dated April 30, 1958 except the first sentence, and I hereby substitute in place of said with-

drawn statement the statement that 'If said stock is voted by your Bank I reserve all rights in law and equity to take legal and other appropriate action against you for just and equitable relief' ".

65. For eight years preceding 1958 the two banks, Credit Suisse and Swiss Bank Corporation, sent in their proxies to management for virtually the whole number of the shares held by them.

66. Credit Suisse and Swiss Bank Corporation together voted approximately only 100,000 shares in the 1958 annual election. These were shares for which they had specific instructions from the beneficial owners. The two banks withheld proxies for their remaining shares, approximately 700,000 in number. Each of these banks withheld its proxies for its remaining shares as the direct result of the receipt by it of Phillips' April 30 telegram.

67. The plaintiffs' and defendants' requests for findings of fact are granted to the extent to which they coincide with the findings of fact hereinbefore made and are denied to the extent to which they do not coincide with the findings of fact hereinbefore made.

## Conclusions of Law

1. The court has jurisdiction of the parties plaintiff and of the following parties defendant: Walter S. Franklin, Robert T. McCracken, James E. Gowen, John A. Dieman, William L. Day, Fred Carpi, David C. Bevan, James P. Newell, James M. Symes, C. Jared Ingersoll, R. George Rincliffe, Bayard H. Roberts and The Pennsylvania Railroad Company.

2. The court has jurisdiction of the cause of action alleged in count I.

3. The court has jurisdiction of the cause of action alleged in count II.

4. The court has jurisdiction of the cause of action alleged in count III.

5. The court is without jurisdiction of the cause of action alleged in count IV, except the class action therein which will be separately reheard and determined.

6. The maintenance by the defendant company of the set of cards on which were recorded the name and address of each stockholder and the amount of stock owned by such stockholder complied with the Constitution and laws of Pennsylvania.

7. Neither Phillips nor his co-plaintiffs made any bona fide request or attempt to exercise the *right of inspection of those records* maintained by the defendant company which disclosed the names and holdings of the company stockholders.

8. The plaintiffs' right, under the Constitution and laws of Pennsylvania, to inspect those records maintained by the defendant company showing the names and holdings of its stockholders was not denied to Phillips or his co-plaintiffs by the defendants.

9. The failure or refusal of the defendant company to prepare for *delivery* to Phillips a *list* of its stockholders and their holdings was not a denial of any right possessed by Phillips or his co-plaintiffs under the Constitution or laws of Pennsylvania or under the Rules of the Securities and Exchange Commission.

10. The failure or refusal of the defendant company to *deliver* to Phillips a copy of the stockholders *lists* prepared by the defendant company for the use of the judges of election or for use at the annual meeting and election of stockholders was not a denial of any right possessed by Phillips or his co-plaintiffs under the Constitution or laws of Pennsylvania or under the Rule of the Securities and Exchange Commission.

11. The refusal by the defendant company to *deliver* to Phillips in New York a copy of the set of cards sent to Georgeson and Company for solicitation

purposes was not a denial of any right possessed by Phillips or his co-plaintiffs under the Constitution or laws of Pennsylvania or under the Rules of the Securities and Exchange Commission.

12. Phillips had no right under the Rules of the Securities and Exchange Commission to require the defendant company to *deliver to him* the third addressed set of proxy forms and proxy material.

13. The defendant company's refusal to *deliver* to Phillips at his request the proxy material and proxy forms, which the Company had addressed to certain groups of stockholders at Phillips' request, did not deprive Phillips of any right and was a lawful exercise of the company's option under the Rules of the Securities and Exchange Commission.

14. Whether, as plaintiffs allege in paragraph 18(e), the present lawsuit is for the purposes which it alleges is immaterial as respects the statements in Symes' letter of April 16, since that letter manifestly referred to Civil Action 24456 which was instituted in this court on April 9, and not to this suit which was filed on May 9, 1958.

15. Symes' letter of April 16 did not, in the particulars asserted in plaintiffs' complaint, violate or conflict with any applicable Rule of the Securities and Exchange Commission.

16. Neither Symes' letter of April 16 nor its distribution violated or conflicted with any applicable Rule of the Securities and Exchange Commission.

17. Symes' letter of May 2 did not, in the particulars asserted in plaintiffs' complaint violate or conflict with any applicable Rule of the Securities and Exchange Commission.

18. Neither Symes' letter of May 2, 1958 nor the distribution thereof violated or conflicted with any applicable Rule of the Securities and Exchange Commission.

19. It was not improper or inequitable for the defendants, James M. Symes, C. Jared Ingersoll, R. George Rincliffe and Bayard H. Roberts, to vote any proxies received by them for the election of the six nominees of the company management, conformably with the authority given by the respective stockholders.

20. Phillips' telegrams of April 30 to the two Swiss banks were deliberately and maliciously sent by him with the intent of having each bank withhold its proxies and with intent thereby to deprive the management candidates of the votes represented by such proxies.

21. Phillips' telegrams of April 30, 1958 to Credit Suisse and to Swiss Bank Corporation were solicitations of security holders within the meaning of the Securities and Exchange Commission Rules.

22. Phillips' failure to file copies of the proposed telegrams with the Securities and Exchange Commission, before sending the originals to the two Swiss banks, constituted a violation of the Rules of the Securities and Exchange Commission.

23. Phillips' telegrams to Credit Suisse and to Swiss Bank Corporation on April 30 constituted the furnishing of communications to security holders under circumstances reasonably calculated to result in the withholding of proxies by the two Swiss security holders.

24. Phillips' telegram of April 30 to Credit Suisse was knowingly, maliciously and intentionally violative of the applicable Rules of the Securities and Exchange Commission.

25. Phillips' telegram of April 30 to Swiss Bank Corporation was knowingly, maliciously and intentionally violative of the applicable Rules of the Securities and Exchange Commission.

26. In this action Phillips came into equity with unclean hands. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 1945, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381; Keystone Driller Co. v. General Excavator Co., 1933, 290 U.S. 240, 54 S.Ct. 146,

78 L.Ed. 293; Holst v. Butler, 1954, 379 Pa. 124, 108 A.2d 740; Vercesi v. Petri, 1939, 334 Pa. 385, 5 A.2d 563.

27. Phillips' unclean hands bar the grant to Phillips of any equitable relief.

28. Except for the representative claim in the class action in count IV of the complaint, upon which rehearing has been ordered, the plaintiffs are not entitled to any of the relief claimed.

29. The plaintiffs' and defendants' requests for conclusions of law are granted to the extent to which the requests coincide with the conclusions of law herein reached and are denied to the extent to which they do not coincide with the conclusions of law herein reached.

Accordingly and conformably to Fed. Rules Civ.Proc. rule 54(b), 28 U.S.C. I enter the following:

### Order

Now, August 18, 1958, the court expressly determines, agreeably to F.R. Civ.P. 54(b), that there is no just reason for delay in the entry of *final* judgment upon all of the plaintiffs' multiple claims *except the plaintiffs' representative claim in the class action embodied in Count IV of this complaint.*

It is ordered and decreed that the restraining order initially entered herein June 4, 1958, and thereafter extended, be and is now vacated.

It is further ordered and decreed that all of the plaintiffs' claims for relief, *except the representative claim in the class action embodied in Count IV of their complaint,* be and are finally denied.

It is further ordered and expressly directed that *final* judgment, with costs, be now entered in favor of the defendants named in Conclusion of Law 1 and against the plaintiffs upon Counts I, II and III and upon the plaintiffs' claims in Count IV *except the aforesaid representative claim therein* upon which judgment is reserved pending rehearing.